RUDOLPH KONOLD, RESPONDENT, *v.* THE RIO GRANDE WESTERN RAILWAY COMPANY, APPELLANT.

PERSONAL INJURIES — ACTION FOR DAMAGES — OBSOLETE TIME-TABLES — WHEN ONLY ADMISSIBLE TO SHOW NO UNUSUAL DANGER IN VIOLATING EXISTING TIME-TABLES. DISREGARD OF RULES AND REGULATIONS — WHEN AMOUNTS TO ABROGA-TION. EVIDENCE INSUFFICIENT TO SHOW ABROGATION. IN-

STRUCTION AS TO ABROGATION — WITHOUT EVIDENCE SHOWING
ABROGATION. NEGLIGENCE° OF AGENT — NOT PROVED BY SHOW-
ING NEGLIGENCE ON OTHER OCCASIONS. INSTRUCTION REFUSED
— NOT ERROR WHEN FULLY COVERED BY INSTRUCTIONS GIVEN.
ASSUMPTION OF HAZARD — RULE. INSTRUCTIONS — EFFECT WHEN
CONTRADICTORY AND INCONSISTENT. EXPERIMENTS — AS EVI-
DENCE — RULE — DISCRETION OF TRIAL JUDGE.

*Personal Injuries — Action for Damages — Obsolete Time-tables —
When Only Admissible to Show no Unusual Danger in Violating
Existing Time-tables.*

In an action for damages for personal injuries caused by the
explosion of the boiler of a locomotive in charge of plaintiff,
and alleged to have been due to defects of which defendant
was and plaintiff was not aware ; the question of contribu-
tory negligence depending somewhat upon the time taken to
run from one station to another, between which stations the
explosion occurred, old time-tables of the defendant company,
not in effect at the date of the accident, are inadmissible for
the purpose of showing that no unusual danger was incurred
by violating the requirements of the existing time card,
unless it be first shown that the conditions were the same
at the date of the time-tables and the time of the accident.

*Disregard of Rules and Regulations — When Amounts to Abrogation.*

When rules and regulations established by the master are habit-
ually disobeyed, with the knowledge or express consent of
the master, or have been disregarded without his express con-
sent in such a manner and for such a length of time as to
raise a presumption that the master (whose duty it is not only
to make and promulgate, whenever engaged in a business of
such a nature as to require it, suitable rules and regulations
for the protection of his servants, but also to use due care
and diligence to have them enforced) must have become
aware of such habitual disregard, and approved the same,
such rules and regulations will be disregarded.[1]

[1] *Pool* v. *S. P. Ry. Co.*, 20 Utah, 210; 58 P., 326 ; *Wright* v. *S. P.
Ry. Co.*, 14 Utah, 394.

*Evidence Insufficient to Show Abrogation.*

Evidence which shows a violation of rules and regulations, as to running time between stations, on only two occasions, one of them being the occasion of the accident, is not sufficient to show an abrogation of such rules and regulations.

*Instruction as to Abrogation — Without Evidence Showing Abrogation.*

An instruction, as to what would amount to abrogation of a published rule, predicated upon evidence which is insufficient to show abrogation, is objectionable, and objection thereto should have been sustained.

*Negligence of Agent — Not Proved by Showing Negligence on Other Occasions.*

Even when the negligence of an agent on a particular occasion is an issue in the case, evidence that he was negligent on other occasions is not admissible.

*Instruction Refused — Not Error when Fully Covered by Instructions Given.*

It is not error to refuse an instruction when the instruction asked is fully covered by other instructions given.

*Assumption of Hazard — Rule.*

The rule as to the assumption of hazard is that a master is bound to observe all the care which prudence and the exigencies of the situation require, in providing the servant with machinery or other instrumentalities adequately safe for use by him; and an instruction that "the plaintiff did not undertake to incur risks arising from defective machinery, or other instruments with which he is to work; his contract implied that in regard to these matters the defendant would make adequate provision that no unnecessary danger should ensue to him," incorrectly states the rule, and is erroneous.

*Instructions — Effect when Contradictory and Inconsistent.*

The giving of contradictory and inconsistent instructions is error.

*Experiments — As Evidence — Rule — Discretion of Trial Judge.*

> Experiments are not competent as evidence unless the conditions under which they are made are the same or approximately the same as those which attended the event in regard to which the experiments are made and the admissibility of such evidence being discretionary with the trial judge, his decision will not be reviewed except in case of a palpable abuse of such discretion.

(Decided April 21, 1900.)

Appeal from the Seventh District Court, Emery County, Hon. Jacob Johnson, *Judge.*

Action for the recovery of damages for personal injuries sustained by plaintiff while in the employ of defendant, alleged to have been caused by the explosion of a defective boiler which plaintiff, in the discharge of his duties, was engaged in using, and of which defects the defendant was, but the plaintiff was not, aware. From a judgment for plaintiff defendant appealed. *Reversed.*

*Messrs. Bennett, Harkness, Howat, Bradley & Richards,* for appellant.

It was the duty of plaintiff to observe all rules and regulations for his guidance in running the train, and he could not substitute his judgment for that of his employer, and it is not the province of the jury to substitute their judgment for that of the superintendent of the road, charged with the duty of making and promulgating rules for the safe operation of the road. *Railroad Co.* v. *Mothershed,* 20 South. (Ala.), 67–69.

The negligent acts of the agent, or of other agents at other times, in no way connected with the time in controversy, is not admissible. *Maguire* v. *Middlesex R. Co.,* 115 Mass., 240; *First N. Bank* v. *Ocean N. Bank,* 60

N. Y., 278, 295; *Eskridge Exr.* v. *Ry. Co.*, 12 S. W. (Ky.), 580; *Couch* v. *Charlotte, etc., Co.*, 28 Am. & Eng. R. C., 331; *Chicago, etc., R. Co.* v. *Hodge*, 55 Ill. App., 166; Am. Dig., 1895, p. 3363, Sec. 342; *Tribette* v. *Ry. Co.*, 13 So. (Miss.), 899; *McNally* v. *Colwell*, 52 N. W. (Mich.), 70.

An employee who receives rules is obliged to conform to such rules according to the plain terms thereof, and not according to what may have been a customary practice of other employees, regardless of the express requirements of the rules. *Gordy* v. *N. Y., etc., Ry. Co.*, 23 Atl. (Md.), 607.

The evidence that employees violated the rule, down on the desert between Helper and Grand Junction, was immaterial for any purpose, and the objection that it was immaterial should have been sustained. *Snowden* v. *P. V. Coal Co.*, 16 Utah, 366; *Stoll* v. *Daly M. Co.*, 19 Utah, 271; S. C., 57 P., 295.

Evidence showing that employees of a railroad company were accustomed to act in violation of a rule of the company is not admissible to establish a waiver of the rule, unless it be shown that the custom was known by the officer charged with the enforcement of the rule. *O'Neil* v. *R. R. Co.*, 45 Iowa, 546; Note 32 Am. St. Rep., 384; *Louisville, & N. R. Co.* v. *Mothershed*, 20 South, 67; *Alabama, etc., R. Co.* v. *Roach*, 20 So. (Ala.), 132; *Spaulding* v. *Ry. Co.*, 67 N. W. (Ia.), 227.

It is error to give an instruction that may be abstractly correct, if there is no testimony upon which to predicate it. *Michigan Bank* v. Eldred, 9 Wall., 544; *Equitable Co.* v. *McElroy*, 83 Fed., 631, 642; *Snyder* v. *Will*, 15 Pa. St., 59; *Sartell* v. *Wilcox*, 20 Pa. St., 116; *American, etc., Co* v. *Moore*, 5 Mich., 368, 380; *Andreas* v. *Ketcham*, 77 Ill., 377; *Howe, etc., Co.* v. *Layman*, 88

Ill., 39; *Mendelsohn* v. *Anaheim Lighter Co.*, 40 Cal., 657; *Perkins* v. *Eckhert*, 55 Cal., 400; *Hess* v. *Wilcox*, 58 Iowa, 380; *Kennedy* v. *Railroad Co.*, 36 Mo., 351; *Birmingham, etc., Co.* v. *Walker*, 28 S. E. (Ga.), 534; *Manning* v. *Railroad Co.*, 17 N. W., 669.

The defendant was entitled to have the witness, Wille, state to the jury not only his opinion upon the subject, but to give his reasons therefor, and to state the experiments he had made, and the result thereof. *Williams* v. *Taunton*, 125 Mass., 34, 40; *Eidt* v. *Cutler*, 127 Mass., 522; *Young* v. *Clark*, 16 Utah, 42, 52; *Stockwell* v. *Railroad Co.*, 43 Iowa, 470, 474; *Missouri, etc., Ry. Co.* v. *Moffat*, 44 Pac. (Kan.), 607, 609; *Beckett* v. *N. W., etc., Assn*, 69 N. W. (Minn.), 923; *McKay* v. *Lasher*, 121 N. Y., 477, 483; *Vietti* v. *Nesbit*, 41 Pac. (Nev.), 151, 153; *State* v. *Jones*, 41 Kan., 309.

No presumption of negligence arises from the fact that the accident has occurred and the plaintiff has been injured thereby. Bailey's Masters' Liability for Injury to Servants, p. 508; *Kuhns* v. *Railway Co.*, 31 N. W., 868; *Curtis* v. *Railroad Co.*, 18 N. Y., 534; *Knight* v. *Cooper*, 14 S. E. (Va.), 999; *Bryner* v. *So. Pac. Co.*, 90 Cal., 496; The W. H. Simpson, 80 Fed., 154; *Spiers* v. *Railroad Co.*, 62 N. W., 68; *Donovan* v. *Railway Co.*, 32 Atl., 350; *Case* v. *R. Co.*, 21 N. W., 30.

The court erred in instructing the jury that they could allow the plaintiff for mental suffering, without stating or limiting the recovery to mental suffering that accompanied his physical suffering, and was dependent upon it. *Railway Co.* v. *Spurrey*, 2 Neg. Rep. (Ill.), 505; *Railroad Co.* v. *Lamereux*, 49 Pac., 152; *Damson* v. *Railroad Co.*, 11 Am. & Eng. R. Cases, 134.

*C. C. Richards, Esq., E. M. Allison, Jr., Esq.*, and *H. R. MacMillan, Esq.*, for respondent.

As the defendant was endeavoring to show that the plaintiff did not have sufficient time in which to run the train from Lower Crossing to Clift. Siding, and caused the explosion by working his engine and boiler too hard and neglecting to supply the boiler with the necessary water, so that he could run the train faster than he ought and reach Clift. Siding in time to side track before the passenger train came along, it was competent, material, and relevant to the issues, for the plaintiff to show the printed time cards as admissions of the defendant that identically the same kind and class of trains were run by the defendant with the same class of engines, over the same rails, in the same direction, both before and since the explosion, and indeed in less time than the plaintiff has, by either his own testimony or by Mr. Allen's testimony. *Ry.* v. *Spilker*, 32 N. E., 285; *Ry. Co.* v. *Selby*, 47 Ind., 494, 495; *Shaber* v. *Ry. Co.*, 28 Minn., 103; *Sheldon* v. *Ry. Co.*, 14 N. Y., 218; *Field* v. *Ry. Co.*, 32 N. Y., 339.

The court did not err in receiving the testimony of the witness Konold, relative to the practice of station agents in recording the time of the departure of trains. *Bailey* v. *Rome Ry. Co.*, 30 N. E., 918; *W. U. T. Co.* v. *Hearne*, 26 S. W., 478; *Bennis* v. *Temple*, 38 N. E., 970; *N. Y. C. R. Co.* v. *Zambaugh*, 38 N. E., 531; *Salem Co.* v. *Griffin*, 38 N. E., 411; *Slea* v. *Glendall Co.*, 38 N. E., 1123; *Chicago R. Co.* v. *Spilker*, 33 N. E., 280–285; *International R. Co.* v. *Kuehn*, 21 S. W., 58, 62; *Harrell* v. *Albemarl R. Co.*, 14 S. E., 687; *Legg* v. *City of Blumefield*, 40 Ill. App., 186; 1 Wharton on Evidence, Sec. 40–43; *Railway* v. *Richardson*, 91 U. S., 454; *Shaber* v. *Railway Co.*, 28 Minn., 103.

It was not error for the court to admit testimony showing the practice on defendant's road and the abrogation

21 Utah—25

of certain rules. *Strong* v. *Iowa Cent. R. Co.*, 62 N. W., 801, 802; *Lowe* v. *Railway Co.*, 56 N. W. (Iowa), 521, where the question is fully considered. *Horan* v. *Railway Co.*, 56 N. W., 508.

The court did not err in striking out certain evidence in regard to experiments made by the witness Wille, nor in refusing to admit evidence of the results of certain tests made by the witness. *Hayes* v. *Railway Co.*, 17 Utah, 105.

Whether evidence of experiments is admissible is, under the circumstances of each case, a preliminary question for the determination of the trial court, and its decision will not be reviewed or reversed on appeal. 12 Am. & Eng. Ency. of Law, 400, 409; *Homan* v. *Franklin Co.*, 98 Iowa, 692; *People* v. *Levine*, 85 Cal., 39; S. C., 22 Pac., 791; *Leonard* v. *Ry. Co.*, 21 Ore., 555; S. C., 28 Pac., 890.

The witness must first show that the conditions surrounding his experiments were the same, or so similar that the court and jury could say that the results would be the same, before he will be permitted to tell what the results were. 12 Am. & Eng. Ency. of Law, 406, 407; *Ry. Co.* v. *Mugg*, 31 N. E. (Ind.), 565, 566; *Com.* v. *Piper*, 120 Mass., 190; *Hawks* v. *Charlemont*, 110 Mass., 113; *Com.* v. *Twitchell*, 1 Brewst., 566; *Burg* v. *Ry. Co.*, 90 Iowa, 106, S. C., 57 N. W., 684; *Leonard* v. *Ry. Co.*, *supra; Kinney* v. *Folkerts*, 84 Mich., 620, 621; *Hurd* v. *Ry. Co.*, 8 Utah, 245; *Moore* v. *Railway Co.*, 61 N. W., 992; *Railway Co.* v. *Champion*, 36 N. E., 223; (dissenting opinion in same case, 32 N. E., 875); *Libby* v. *Scherman*, 34 N. E., 803; *U. S.* v. *Reid*, 42 Fed., 134; *Clark* v. *Willett*, 35 Cal., 535; *Railway Co.* v. *Pearson*, 35 Cal., 247; *Medsker* v. *Pague*, 27 N. E., 432; *Railway Co.* v. *Glascott*, 4 Colo., 270; *Klanowski*

v. *Railway Co.*, 31 N. W. (Mich.), 275; *Railway Co.*
v. *Burgess*, 22 So., 139–171.

BASKIN, J.

This is an action for the recovery of damages, on
account of injuries sustained by plaintiff on the 27th day
of May, 1896, while in the employ of defendant, as an
engineer on its railroad, alleged to have been caused by
the explosion of a defective boiler, which the plaintiff, in
the discharge of his duties, as engineer of the defendant,
was engaged in using, and of which defects the defendant
was, but the plaintiff was not, aware.

The answer denied these allegations, and alleged con-
tributory negligence on the part of plaintiff.

Upon the trial the jury returned a verdict in favor of
the plaintiff for $8,000, and judgment for that sum was
rendered against defendant. From this judgment the
defendant has appealed.

1. The plaintiff, as engineer, was in charge of the
locomotive on which the explosion, which caused the
injury, occurred, and in running the train it was his duty
to observe the reasonable and proper rules and regula-
tions of his employer. If he failed to do so, and such
failure directly contributed to his injury, he can not
recover, in the absence of some legitimate excuse for his
disobedience of such rules and regulations. Thompson
on Negligence, p. 1018, Sec. 23; Bailey's Masters' Lia-
bility, pp. 88, 89; *Wolsey* v. *Lake Shore R. R. Co.*, 33
Ohio St., 227; *Krew* v. *St Louis K. & N. W. Co.*, 20
Fed. R., 87; *Lyon* v. *Detroit, etc., R. R. Co.*, 31 Mich.,
429; *Shany* v. *Androscoggin Mills*, 66 Me., 420; *Mem-
phis, etc., Ry. Co.* v. *Thomas*, 51 Miss., 637.

It appears from the evidence that the train, the number
of which was 20, consisted of 32 freight cars weighing

830 tons; that it reached Lower Crossing more than an hour behind time; that the distance from Lower Crossing to Clift. Siding, between which places the explosion occurred is five and seven-tenths miles, and the railroad track between these places is a single one.

The plaintiff testified that, "It is a little down grade if anything, going east out of Lower Crossing. Then there is a light grade, running from seven tenths to nine tenths of 1 per cent. That grade continues to within 800 feet of where the explosion occurred, and from there to where the explosion occurred it is level. We had got over the hill and on to the level about 800 or 900 feet before the explosion occurred; just about the length of my train." He also testified that "when we left Lower Crossing we had to make a meeting point with a passenger train at Clift. Siding."

The passenger train was on time and was due at that point at 4:54 P. M. The plaintiff also testified that the train left Lower Crossing at 4:30 P. M.

William Allen, the agent and telegraph operator of the railroad at Lower Crossing, testified without objection by respondent, that he was on duty there on the day of the explosion; that it was his duty to enter the arrival and departure of each train on a sheet provided for that purpose by the company; that on that day the train on which the plaintiff was injured left Lower Crossing, going toward Clift. Siding at 4:33 ¾ P. M., and that he entered the time of departure at 4:33 P. M., because fractions of minutes, under the instructions of the company were not to be entered.

Counsel for the appellant state in their brief, and it is not disputed by counsel for respondent, that the sheet in which this entry was made was used in the former trial of this case and was lost at that trial.

The plaintiff on cross-examination stated in substance that he knew it was the duty of the station agent at said crossing to take down the time the train left, and wire it to the dispatcher in Salt Lake City, that he believed such to be the rule of the company, and they have a clock there for that purpose; that he saw at the former trial the record made by Allen saying that the train left at 4 : 33 P. M., and heard him testify that he made   correctly, except that he gave us the benefit of three fourths of a minute, but that the record was not correct.   He also stated that he had a time card for his guidance in running the train.   This card was introduced in evidence by the defendant, and in terms allowed thirty minutes in which to run that train from Lower Crossing to Clift. Siding.

The plaintiff, on cross examination, further stated that he had at the time also a book containing the regulations of the company for his guidance as an engineer.   The defendant introduced and read in evidence from said book the following:

" Notice.   A perfect familiarity with, and a strict observance of, these rules will be expected of and required from all employees.

Train Rules.   Rule 86: When a train of inferior class meets a train of superior class on single track, the train of inferior class must take the side, and clear the train of superior class five minutes.   The train of inferior class must keep five minutes off the time of the train of superior class following it.

Respondent's counsel state in their brief that this rule required freight trains, when meeting passenger trains, to get on to the side track five minutes before the passenger trains were due.

We think that such is the requirement of that rule, so that if as stated by plaintiff, the train left Lower Crossing

at 4 : 30 P. M., it would have to make the run to Clift. Siding in nineteen minutes in order to properly clear the way for the approaching passenger train, and if as stated by Allen, it left at 4 : 33 P. M., it would have to make the run in sixteen minutes.

Plaintiff made no objection to the admission in evidence of the time card, and the portions of said book read to the jury, but in rebuttal thereof, and for the purpose of showing that no unusual danger was incurred by violating the requirements of the time card, and the rules and regulations of the company, offered in evidence four of the company's time-tables, the first of which went into effect March 31, 1895, the second January 17, 1897, the third November 3, 1897, and the fourth March 5, 1898. The running time for freight trains from Lower Crossing to Clift. Siding fixed by these time-tables was respectively, 22, 25, 23, and 18 minutes. These time-tables were not in effect at the time the plaintiff was injured, and did not impose upon him any duties. His duties in respect to the running of the train were those prescribed in the aforesaid time card and book of rules and regulations of the company.

The defendant objected to the introduction of each of these four time-tables, as they were severally introduced, on the grounds that they were immaterial, not being in effect at the time of the accident, and it not having been shown that the conditions, which attended the trains, to which said time-tables related, were the same as the conditions which attended the train on which the plaintiff was injured in this: it was not shown that the engines were the same, or that the trains were the same, or were of the same class. The objection was overruled, and the proffered evidence admitted.

There can be no doubt but that, unless the conditions

were the same, and the plaintiff first laid the foundation for the admission of said time-tables by proof of that fact, the trial court erred in overruling the objection.

Respondent's counsel state in their brief that "the same conditions were not shown to exist when the time-tables were received in evidence," but claim that later on in the trial the objections thereto were obviated by the testimony of Mr. Allen, a witness for the defendant. On cross-examination Mr. Allen stated that he did not know whether the engines were the same, and no other witness stated that they were the same. Nor was it shown, or any attempt made to show that any of the trains, subject to said time-tables, which were hauled, were composed, approximately, of the same number of cars, or were approximately of the same weight, as the train on which the explosion occurred. The engines used in moving said trains may have had sufficient capacity to haul a train of much greater capacity and weight than the one on which the explosion occurred from Lower Crossing to Clift. Siding in a shorter time than even eighteen minutes; and no engine of the same or approximate capacity may ever have drawn any train, which was subject to said time-tables, of the same or approximate size and weight, as the one in charge of plaintiff, from Lower Crossing to Clift. Siding, in the time attempted by plaintiff, and nothing to the contrary appears from the showing made.

Mr. Allen, on cross-examination, further stated that two of said trains were of the same class as the one in charge of plaintiff, but that fact does not obviate the objection.

2. Respondent's counsel, in their brief, state that, "It is not denied that it was the duty of conductors and engineers in running their trains to obey the rules and regulations promulgated by their superiors for their guid-

ance, provided that such rules and regulations are reasonable and are enforced," but claim that the printed rules and time cards of the company were not enforced, but were habitually violated, and that therefore the plaintiff was not bound to obey the same. The true rule on this subject is that when the rules and regulations established by the master are habitually disobeyed, with the knowledge or express consent of the master, or have been disregarded without his express consent in such a manner, and for such a length of time, as to raise a presumption that the master (whose duty it is not only to make and promulgate, whenever engaged in a business of such a nature as to require it, suitable rules and regulations for the protection of his servants, but also to use due care and diligence to have them enforced. *Pool* v. *Southern Pac. Co.*, 20 Utah 210; 58 Pac., 328, 329) must have become aware of such habitual disregard, and approved the same, such rules and regulations will be regarded as abrogated. This view is sustained by the opinion of Mr. Justice Bartch, and the cases cited therein, in the case of *Wright* v. *Southern Pac. Co.*, 14 Utah, 394, 395.

There is no evidence tending to show that the company expressly authorized any infractions of its rules or regulations, or that its officers had actual knowledge of any violation of the same, except in the one instance hereinafter mentioned. Therefore if the rules and regulations of the company were ever abrogated, it must have been done by the habitual disregard of the same in such a manner and for such a length of time as to raise the presumption before mentioned.

It appears from the evidence upon this point, that previous to the explosion the plaintiff had made three round trips, in which, going and returning, he passed Lower Crossing and Clift. Siding six times: that he started

on the first trip on the 1st day of May, 1896, and returned on the third day of that month. When the other trips were made does not appear. The explosion occurred on the 27 of that month.

In the examination in chief of plaintiff, he was asked the following questions, and answered as follows:

"Q. How often had you gone over that road; Judge Howat says once?

A. I had made three round trips prior to that time.

Q. Six times you went past there, isn't it?

A. Yes, sir; on that particular division.

Q. Do you know the custom that existed—do you know the practice that obtained on defendant's road at this point, when a superior train was to meet an inferior train, as to how soon the inferior train should get to the meeting point before the arrival of the superior train.

A. Yes, sir.

Q. Now state, if you please, what that custom is—practice?

A. The practice was that if we got there in the clear sufficient time, to get out of the way of the passenger, or in case of not being there in time, to put in protected, was all that was required of us by the practice.

Q. What was protected?

A. To send out a flagman a distance, that they can plainly see us and stop their train in case we didn't get on the switch, or anything happened we could not get in."

On cross-examination he stated that in making these three round trips he did not meet any passenger trains at Clift. Siding going from Lower Crossing; that he understood it to be the practice in meeting passenger trains at Clift. Siding to disregard said instructions; that he didn't

have any instructions on that day (the day of the injury) with regard to the running at that particular point except the time card.

Mr. Allen further testified that, "It was the practice for the trainmen not to undertake to get their trains up·from Lower Crossing to Clift. Siding, and sidetrack them, in less than thirty-five minutes, as against the passenger train. There are second-class trains which are only allowed to carry 550 tons, which would take less time to go;" that he only knew of one violation of this practice, and in that connection he made the following statement: "There are some things which impressed on my mind this one time when the train came in in less time against the passenger train, and that is, that General Superintendent Welby was on the passenger train that day,· and the conductor came in on front of the engine, on the pilot, just about the time; just a little before the passenger train was due, only a minute or so, and the conductor was not on the road but a very short time after that."

The train on which the plaintiff was injured, at the time of the injury, was running against a passenger train. There was no evidence whatever adduced in the case, showing or tending to show that a train of any class ever made or attempted to run from Lower Crossing to ·Clift. Siding, against a passenger train in less time than was provided by the rules or regulations of the company, but twice; once on the occasion mentioned by the witness Allen, and on the occasion when the plaintiff was injured.

The evidence was not sufficient to show that the rules and regulations of the company, so far as they related to the train on which the plaintiff was injured, had been abrogated, or to raise, in regard to the same, the presumption before mentioned. Therefore the admission of the testimony objected to by the defendant, was error.

3. The following instruction predicated upon the evidence relating to the abrogation of the rules and regulations of the company, was given: "If the defendant company suffered for a length of time amounting to approval, or actually approved the habitual disregard of any of its rules and regulations in evidence, then in that case such rule so habitually disregarded, if it were disregarded, was inoperative and abrogated, and the practice followed became the rule."

An exception to this instruction was duly taken by the defendant, based upon the objection that there was no evidence on which to predicate it.

It follows from our conclusion on this question herein before announced, that the objection should have been sustained.

4. For the purpose of breaking the force of the entry of the time at which the wrecked train left Lower Crossing, and which entry was conceded to have been made by Allen, as agent, on the sheet furnished to him by the company for that purpose, and which the plaintiff in his testimony stated it was the duty of Allen, as agent, to make, and that he had made an entry of the time, but not correctly, plaintiff's attorney asked him the following questions:

" Q. What is the practice pursued by railroad agents in making records, as to having it exact or otherwise?

Q. What was the practice as to making the departure and arrival of trains correctly? "

Defendant's attorney made the following objection to these questions: " I object to that as being immaterial and incompetent, for the reason that it does not refer to this particular entry, made by the station agent at Lower Crossing; if that was correct, it was immaterial whether other people indulged in the practice of being incorrect or not."

This objection was overruled, and the plaintiff made the following answers:

"A. They are not always made correctly. A. Very often they would ask some engineer, or someone else sitting around the office, as to what time the train did depart, and record it that way."

The questions were not confined to the practice of Allen, nor do the answers assert that it was his practice to make false entries. The fact that it was the practice of other agents to disregard their duties, did not tend to show that such was the practice of Allen, or that the entry in question was false.

Even when the negligence of an agent on a particular occasion, is an issue in the case, evidence that he was negligent on other occasions is not admissible, and has no legitimate bearing upon the question. *Maguire* v. *Middlesex Ry. Co.*, 115 Mass., 239; *Chicago & Alton Ry. Co.* v. *Hodge*, 55 Ill. App., 166.

The objection of defendent should have been sustained.

5. The defendant asked the trial court to give the following instruction:

"When the plaintiff entered the service of the defendant company, as a locomotive engineer, he assumed all the risks of the occupation that were ordinarily incident to it, and all risks arising from the defective condition of the machinery and appliances that were not observable by the defendant in the exercise of ordinary care, and for an injury to himself arising from any of these assumed risks, the plaintiff can not recover." This instruction the court refused to give as requested, but modified the same by adding thereto the following:

"The plaintiff did not undertake to incur risks arising from defective machinery or other instruments with

which he is to work; his contract implied that in regard to these matters the defendant would make adequate provision that no unnecessary danger should ensue to him," and gave the instruction as modified.

The defendant excepted to the refusal to give the instruction requested, and also to the giving of the instruction as modified.

This modification is not consistent with that portion of the modified instruction which the defendant requested to be given, and is contradictory to and inconsistent with other instructions given by the court.

The 13th instruction given by the court is as follows:

"The defendant was not required to warrant the perfection of its machinery or appliances, or to insure its employees from injury from boiler explosions or other like accidents; the defendant's duty to the employees was only to use due care and diligence, first, to furnish a suitable and safe engine, and the due care and diligence to keep it in that condition. And by 'due care and diligence,' I mean the care and diligence which a man of ordinary prudence, engaged in like business, would exercise for his own protection and the protection of the property."

Other instructions of like character, were also given. These instructions correctly stated the law applicable to this branch of the case, and therefore no error was committed in refusing to give the instruction asked for by defendant, because the instructions given fully covered the same ground. The objectionable part of the modified instruction is the modification. The modification is based upon the language used by Judge Field, in the case of the *Northern Pacific Ry. Co.* v. *Herbert*, 116 U. S., 648, which is as follows: "The servant does not undertake to incur the risks arising from the want of sufficient and skillful co-laborers, or from defective machinery or other

instruments with which he is to work. His contract implies that in regard to these matters his employer will make adequate provision that no danger shall ensue to him."

In connection with this language Judge Field cites the case of *Hough* v. *Railroad Company*, 100 U. S., 217, and quoted language therefrom which modifies the language used by him. In the opinion in that case it is said that, "One, and perhaps the most important, of those exceptions arises from the obligation of the master, whether a natural person or a corporate body, not to expose the servant, when conducting the master's business, to perils or hazards against which he may be guarded by proper diligence upon the part of the master. To that end the master is bound to observe all the care which prudence and the exigencies of the situation require, in providing the servant with machinery or other instrumentalities adequately safe for use by the latter."

In the case of Washington, etc., *Railroad Co.* v. *McDade*, 135 U. S., 569, the instruction to the jury was as follows: "The jury are instructed that the defendant was not a guarantor of the safety of its machinery, and was only bound to use ordinary care and prudence in the selection and arrangement and care thereof, and had a right to use and employ such as the experience of trade and manufacture sanctioned as reasonably safe."

In passing upon the validity of this and other like instructions the court said: "We do not think there was any error in any of these instructions of which the defendant had any right to complain. The propositions contained in them are in strict accord with the principles laid down by the decisions of this court." And cited in support thereof the following cases: *Hough* v. *Railroad Co.*, 100 U. S., 213, 217; *Northern Pacific Railroad*

v. *Herbert*, 116 U. S., 642, 647; *Kane* v. *Northern Central Railway*, 128 U. S., 91, 94; *Jones* v. *East Tennessee, etc., Railroad Co.*, 128 U. S., 443.

A note at the end of the opinion indicates that Judge Field sat in the case.

From the foregoing facts it is clear that the case of the *Northern Pacific Railway Co.* v. *Herbert*, *supra*, does not warrant said modification, but that it is against the rule settled by the U. S. Supreme Court.

The cases of other courts holding the same doctrine are numerous. In fact there is no conflict in regard to the rule.

6. Respondent contends that all of the instructions should be construed together, and that the 13th instruction before quoted, and those of the same character given, "fully protected the appellant on this point" (the one raised by appellant on the modified instruction).

Instructions on a material point in the case which are inconsistent or contradictory, should not be given. The giving of such instructions is error, and a sufficient ground of reversal because it is impossible after verdict to ascertain which instruction the jury followed, or what influence the erroneous instruction had in their deliberation. This has been so uniformly held that citations are unnecessary.

7. The appellant claimed at the trial that the contributory negligence of the plaintiff consisted of allowing the water in the boiler to become so low as to leave a portion of the crown sheet bare and become heated to a red heat, and thus cause the explosion.

To establish this the defendant offered to prove certain experiments by H. V. Wille, a mechanical engineer and expert, which he had made for the express purpose of determining the cause of the explosion. Objection having been made by plaintiff on the ground that the conditions,

as stated by Wille, under which he made the experiments, were not the same, or so similar as those attending the . explosion, "that the court and jury could say that the result would be the same," the court refused to permit the experiments to be submitted to the jury. There is ~ nothing in the abstract which shows that Wille, as an expert, expressed any opinion as to the cause of the explosion, therefore the cases cited by appellant's counsel which hold "that one who has given his opinion in evidence, as an expert, may also be permitted to testify to the grounds of the opinion expressed, which frequently includes evidence of experiments made during the course of his investigation of the subject to which his testimony relates (12 Am. & Eng. Enc. of Law, 2d ed., 409 and cases there cited), among which is the case of the *People* v. *Thompson*, 81 N. W. Rep., 344, and upon which counsel for appellant laid much stress. The general rule on the subject is that experiments are not competent as evidence unless the conditions under which they are made are the same or approximately the same as those which attended the event in regard to which the experiments are made.

In passing upon the admissibility of such evidence the presiding judge exercises a discretionary power, and his decision, except in a case of palpable abuse of the discretion, will not be reviewed by an appellate court. 12 Am. & Eng. Enc. of Law, 400 and cases cited; *State* v. *Webb*, 18 Utah, 441.

The foundation laid for the admission of said experiments was in some particulars unsatisfactory, and therefore we do not think that such an abuse of discretion appears as would justify a reversal of the judgment.

It is not necessary to pass upon the other questions raised in the case.

It is ordered that the judgment be reversed at the costs of respondent, and that the case be remanded with directions to the court below to grant a new trial.

BARTCH, C. J., and MINER, J., concur.