D. T. DOVER, ADMINISTRATOR, v. MAYES MANUFACTURING COMPANY.

(Filed 13 December, 1911.)

1. **Master and Servant—Driver of Teams—Negligence—Scope of Employment—Respondeat Superior.**

   The master is not responsible for the negligent acts of the servant employed for the ordinary duty of driving a team of mules hitched to a wagon for the purpose of hauling lumber, in causing an injury to one whom, in the absence of the master and without his knowledge, express or. implied, he had permitted to ride on the wagon loaded with lumber; for such acts are beyond the scope of the servant's employment, and not done in furtherance of the duties owed by the servant to the master.

2. **Same—Implied Authority.**

   One who is employed to drive a team of mules to a wagon for the ordinary purposes of hauling has no implied authority from the master to permit boys to ride on the wagon, as such is not within the scope of the servant's employment.

3. **Same—Dangerous Instrumentalities.**

   The plaintiff's intestate having been killed from an injury received while riding on a wagon loaded with lumber drawn by a team of mules with a tendency to run away, in charge of the defendant's driver, with the permission of the driver and without the knowledge of the defendant, plaintiff brings his action on the grounds that the injury was inflicted through the negligence of the driver: *Held,* a team of mules and wagon is not a "dangerous instrumentality" within the meaning of *Stewart v.*

*Lumber Co.*, 146 N. C., 85, making the master liable for the injury inflicted, without regard to whether the servant was acting beyond the scope of his employment.

APPEAL from *Biggs, J.*, at March Term, 1911, of MECKLENBURG.

Civil action for damages for the alleged negligent killing of William Dover, the son and intestate of plaintiff.

At conclusion of the evidence a judgment of nonsuit was ordered upon motion of defendant, and plaintiff excepted and appealed.

*Burwell & Cansler for plaintiff.*
*A. G. Mangum, Osborne, Lucas & Cocke for defendant.*

BROWN, J. The plaintiff's intestate, a boy 10 years old, was killed by the running away of a team of mules belonging to the defendant, Mayes Manufacturing Company, and in charge of one of its servants. The evidence offered by the plaintiff shows that the team was being driven by a negro boy 17 years old and was at the time pulling a wagon partially loaded with lumber which was being moved for the defendant. After the lumber was loaded, the plaintiff's intestate and two other small boys climbed on the wagon. There was also on the wagon with the driver another negro boy 18 or 19 years old. When the wagon was approaching a hill on a street in the village of Mayesworth, and just before starting up the hill, the negro driver made two of the white boys on the wagon get off, but let the Dover boy, plaintiff's intestate, remain on the wagon and permitted him to drive the mules, and while the boy was driving the negro boy stood up behind him and whipped the mules so that they trotted up the hill, and he continued to whip them until they passed over the top of the hill and out of sight of the witness. Another witness for the plaintiff testified that when he saw the mules they were running down the hill on the opposite side; that one of the negro boys had the reins and the Dover boy was sitting on the wagon in front of him, and that presently the negro boys jumped or fell from the wagon.

This witness then gives the following description of the manner in which the Dover boy was killed: "They ran on about 20 feet, and the lumber got to jogging and he got on his feet in

some way and leaned over and the lumber carried him over, and as he went over the hind wheel struck him right across the head." There was evidence that the mules had run away several times before this accident, the runaways being attributed by the witnesses to several causes. Once the lumber was "punching" the mules, and in another instance a table which was being placed on the wagon fell on the mules, and one witness said he had seen them run away and did not know the cause.

Augustus Lay, a witness for the plaintiff, testified that he was manager of the defendant's store and had charge of the teams and farms; that these mules "would run off if a man is not there sufficient to hold them, if lumber jumps up and strikes them, or if a table or box strikes them"; that the boys in the village were in the habit of riding on the wagons, and he would run them off three or four times a day.

At the conclusion of the plaintiff's evidence, the court overruled defendant's motion for judgment of nonsuit, and the defendant introduced a number of witnesses whose testimony was directly opposed to that of the plaintiff. At the conclusion of all the evidence, upon an intimation of the court that he would charge the jury that if they believed the evidence the plaintiff was not entitled to recover, the plaintiff submitted to a judgment of nonsuit. The correctness of this ruling is the sole question presented for our determination.

At the very threshold of this case we are confronted with a state of facts which compels us to sustain the judgment of his Honor, *Judge Biggs.* Construed in the light most favorable to the plaintiff, the evidence establishes the fact his intestate was invited by the defendant's servant to ride on the wagon. It is not alleged, nor does it appear in evidence, that the servant had express authority to invite or permit boys to ride on the defendant's wagons. It was shown that the servant's duties were those of an ordinary driver of a team of mules, and that at the time of the accident he was engaged in the performance of such duties. We must hold upon this state of facts that he had no implied authority to permit boys to ride on his wagon, and that in doing so he acted beyond the scope of his employment. As authority for this conclusion we have only to repeat well-settled principles in the law of master and servant.

"In an action for tort, in the nature of an action on the case, the master is not responsible if the wrong done by the servant is done without his authority and not for the purpose of executing his orders or doing his work. So that, if the servant, wholly for a purpose of his own, disregarding the object for which he is employed, and not intending by his act to execute it, does an injury to another, not within the scope of his employment, the master is not liable." *Howe v. Newmarch,* 94 Mass., 49; *Fleischner v. Durgin,* 207 Mass., 435. This doctrine so well expressed by the Supreme Court of Massachusetts has found ready acceptance and frequent application by our Court. *Roberts v. R. R.,* 143 N. C., 178; *Sawyer v. R. R.,* 142 N. C., 1; *Vassor v. R. R.,* 142 N. C., 68; *Hayes v. R. R.,* 141 N. C., 195; *Jackson v. Telephone Co.,* 139 N. C., 347; *Plamer v. Street Railway Co.,* 131 N. C., 250; *Cook v. R. R.,* 128 N. C., 333; *Pierce v. R. R.,* 124 N. C., 83; *Willis v. R. R.,* 120 N. C., 508; *Waters v. Lumber Co.,* 115 N. C., 648.

The recent case of *Marlowe v. Bland,* 154 N. C., 140, presents an interesting application of this principle. In that case a farm hand was directed to cut and pile certain cornstalks, and, without being directed to do so, he set fire to the pile, from which sparks were blown by the wind to defendant's woods, causing a fire and doing two or three hundred dollars of damage. Upon these facts we sustained a judgment of nonsuit, and in the opinion of the Court, written by *Mr. Justice Hoke,* will be found frequent quotations from the very thorough discussions of this question by *Mr. Justice Walker* in *Jackson v. Telephone Co., supra,* and in *Daniel v. R. R.,* 136 N. C., 517. In the latter case the learned justice says: "It is not intended to assert that a principal cannot be held responsible for the willful or malicious acts of the agent, when done within the scope of his authority, but that he is not liable for such acts unless previously and expressly authorized or subsequently ratified, when they are done outside of the course of the agent's employment and beyond the scope of his authority, as when the agent steps aside from the duties assigned to him by the principal to gratify some personal animosity, to give vent to some private feeling of his own (*McManus v. Crickett,* 1 East, 106); and as is forcibly

stated by *Lord Kenyon* in the case cited, quoting in part from *Lord Holt,* 'No master is chargeable with the acts of his servant but when he acts in the execution of the authority given him.' Now, when a servant quits sight of the object for which he is employed, and, without having in view his master's orders, pursues that which his own malice suggests, he no longer acts in pursuance of the authority given him, and his master will not be answerable for his acts."

In his learned opinion in *Stewart v. Lumber Co.,* 146 N. C., at page 112, *Mr. Justice Walker* quotes this language from his opinion in the *Daniel case,* and well says: "What better authority can we invoke in support of our position than the opinions of the Court of King's Bench, as delivered by *Lord Holt* and *Lord Kenyon?"*

"The test of liability in all the cases," says *Mr. Justice Hoke* in *Sawyer v. R. R.,* 142 N. C., 1, "depends upon the question whether the injury was committed by the authority of the master, expressly conferred or fairly implied from the nature of the employment and the duties incident to it."

This doctrine of *respondeat superior,* as it is now established, is a just but a hard rule. The master exercises care in the selection of his servant and retains in his service only such servants as are prudent and trustworthy; the servant in the prosecution of the master's business must of necessity pass beyond his sight and out of his control; and yet the law makes the master liable for the conduct of the servant. The application of this principle without working the greatest injustice to every employer of a servant is made possible only by the limitation established by the courts, that when the servant does an act which is not within the scope of his employment the master is not liable. "Beyond the scope of his employment the servant is as much a stranger to the master as any third person, and his act in that case cannot be regarded as the act of the master. The rule as it is now established by the later judicial declarations should be strictly held within its defined limits. It is a rule capable of great abuse and much hardship and the courts should guard against its extension or misapplication." *Holler v. Ross,* 68 N. J. Law, 324.

The authorities on this question from other courts are col-
lected and fully discussed in the opinion of *Mr. Justice Connor*
in *Stewart v. Lumber Co.*, 146 N. C., 85. The principal opinion
in that case was not in conflict with the views expressed in the
dissenting opinion upon the general principle of the liability of
the master for the conduct of his servant when acting beyond
the scope of his employment. The conflict arose upon the appli-
cation of this principle to the willful and wanton conduct of an
engineer in blowing his whistle for the purpose of frightening
plaintiff's horses. We said in the opinion of the Court: "This
immunity from liability for tort referred to is not generally ex-
tended to railroads, whose servants are entrusted with such dan-
gerous instrumentalities and ·have thereby such unusual and
extensive means of doing mischief." *Mr. Justice Walker* and
*Mr. Justice Connor* entered vigorous dissents to this exception
to the general rule, and maintained that the rule should be
applied to railroads as well as to other employers, exempting
them from liability for the wanton and malicious acts of their
servants when beyond the scope of their employment.

We have a number of cases from other courts which directly
sustain the position that the defendant's driver was not acting
for his master when he permitted plaintiff's intestate to ride
on the wagon. In the leading case of *Bowler v. O'Connell,* 162
Mass., 319, the servant of the defendant, a boy 13 years old, was
leading a colt belonging to the defendant from the stables to
defendant's yard, and invited the plaintiff, a boy between 5 and
6 years of age, to ride, and the plaintiff was kicked by the colt
while going forward to accept the invitation. The Court, deny-
ing defendant's liability, says: "The true test of liability on
the part of the defendants is this: was the invitation given in
the course of doing this work or for the purpose of accomplish-
ing it? Was the act done for the purpose or as a means of
doing what Frank (the servant) .was employed to do? If not,
then in respect to that act he was not in the course of the de-
fendant's business. An act done by a servant while engaged in
his master's work, but not done as a means or for the purpose
of· performing that work, is not to be deemed the work of the
master. And under this rule, in view of the testimony, the de-

fendants were not responsible for the consequences of Frank's invitation to the plaintiff to ride upon the colt." This case was followed in *Driscoll v. Scanlon,* 165 Mass., 348, in which it is held: "If a driver of a cart invites an infant to drive with him, either for pleasure or to take his place in driving while he sleeps, and the infant falls from the cart and is run over by it, the act is outside the driver's authority, and his master is not liable to the infant."

"The owner of the wagon in charge of a skillful driver is not liable for the death of a child fatally injured in attempting to alight from the wagon after having climbed thereon at the invitation of the driver who was neither expressly nor by implication authorized to invite children to get upon the wagon, and whose act in doing so was in no sense within the scope of his employment or in furtherance of the master's business." *Stone Co. v. Pugh,* 115 Tenn., 688.

In *Kiernan v. Ice Co.,* 63 At., 998 (N. J.), it appeared from the testimony that the plaintiff, a boy of 15 years, was invited by the defendant's servant, engaged at the time in driving an ice wagon, to take a piece of ice from the wagon, and while he was in the act of doing so he was assaulted by the servant. In denying plaintiff's right to recover, the Court says: "There is nothing to show that Lahey (the driver) had any express or implied authority from the defendant to permit any one to take ice gratuitously from the wagon. Therefore, when Lahey gave such permission, he did it on his own responsibility and not as a servant of the defendant."

The Supreme Court of Michigan, in *Schulwitz v. Lumber Co.,* 126 Mich., 559, had occasion to apply this principle to a state of facts very similar to that presented in this case, and held that, "A master is not liable for the negligence of his servant in permitting a boy, contrary to the master's orders, to ride upon a wagon provided for the servant's use in hauling lumber, such act not being within the scope of the servant's employment." *Mahler v. Scott,* 129 Mich., 614; *Corrigan v. Hunter,* 122 S. W. (Ky.), 131; *Sweeden v. Improvement Co.,* 125 S. W. (Ark.), 439.

We cannot hold that a team of mules and wagon is a "dangerous instrumentality," and that the defendant should be made liable for the death of plaintiff's intestate without regard to whether the servant was acting beyond the scope of his employment. Pollock on Torts, 480. But if we should so hold, it would not change our decision, because the character of the mules was not the cause of the death of plaintiff's intestate. The accident was the result of the conduct of the defendant's servant, for which the defendant is not liable. *Dougherty v. Railway Co.,* 137 Iowa, 357.

The judgment of the Superior Court is
Affirmed.