## LOONEY v. BINGHAM DAIRY et al.

No. 4795. Decided September 25, 1929. (282 P. 1030.)
Certiorari Denied December 13, 1929.

54

*F. W. James,* of Salt Lake City, for appellants.

*Clawson & Elsmore,* of Salt Lake City, for respondent.

STRAUP, J.

This case was here on a former appeal from a judgment in favor of the plaintiff. The judgment was reversed and a new trial granted, 70 U. 398; 260 P. 855. A retrial before a jury again resulted in a judgment in favor of the plain-

tiff against the firm or copartnership and against James Makrakis and Chris Furgis individually, the members of the firm, from which all of the defendants again appeal.

On the first trial it was alleged in the complaint that the defendants Chris Furgis and James Makrakis were partners in business at Bingham Canyon carrying on a dairy business; that in connection with such business they there maintained a barn where horses were kept, a milkhouse, and other buildings, and that a portion of the premises was open and uninclosed, where children had been accustomed to frequent and play; that the defendants kept a vicious horse, "addicted to kicking"; and that the defendants negligently let the horse run loose and unattended in such uninclosed portion of the premises, and while so running loose the horse kicked the plaintiff.

On the second trial an amendment was made to the complaint, wherein it was further alleged that the defendants negligently permitted and directed the plaintiff, a boy between eight and nine years of age, to drive the horse so loose and unattended, and, as a result of the plaintiff attempting to do so, he was kicked and injured by the horse.

The evidence with respect to the material facts is set forth in the opinion on the first appeal. There is no substantial difference in the evidence on the two appeals. To support the charged negligence set forth in the amendment to the complaint, the plaintiff and one of his boy companions testified that Pete Pappas, an employee of the defendants, and employed to drive a milk wagon delivering milk and to wash bottles at the milkhouse, called them from the railroad depot yard or grounds nearby to help wash bottles, and then directed them to drive the horse, loose and unattended, and feeding on hay on a wagon nearby, in the barn; and, as testified to by the plaintiff's boy companion, as the plaintiff approached the horse from the rear and motioned with his arms and said "shoo" to the horse, the horse "raised his ears and kicked the plaintiff in the face and that the horse then stood and looked at the plaintiff and went on eating

hay." The plaintiff and one or two of his boy companions
further testified that on several other occasions, when one
or both of the defendants were present, he and other boys
were called over by Pappas to wash bottles, and for doing
such work were given milk or a few nickels, and that on
several occasions they raked up the yard. But no evidence
was given to show that the plaintiff or any of the boys or
children at any time prior to the accident were requested
or directed to do anything about or with any of the horses
of the defendants. There was no evidence to show that at
the time in question the plaintiff or any of his companions
was at play about the yard or any part of the defendants'
premises, or that they or any of them on the occasion in
question had entered the yard or any part of the defendants'
premises to play or for the purpose of playing. All the evi-
dence on behalf of the plaintiff shows that the plaintiff and
his companion on the occasion in question came to the milk-
house and on the defendants' premises at the request of
Pappas to wash bottles, and shortly thereafter were re-
quested or directed by him to drive the horse in the barn.

Pappas testified that on the day in question, and just be-
fore the accident, he had returned from a trip delivering
milk, unhitched and unharnessed the horse, and let him
go to the watering trough near the barn, and, while the
horse was watering Pappas went upstairs in the milkhouse
to get a key, and in his absence the plaintiff and his boy
companion, without his knowledge, had entered the yard
and the premises of the defendants where the horse was,
and that when Pappas returned the boy had been kicked;
that the plaintiff was not nor was any one about the yard
or on any part of the defendants' premises when Pappas
left the horse and entered the milkhouse to get the key, and
that he had not on such occasion or on any other occasion
requested the plaintiff or any of the boys to wash bottles
or to do anything else, and that, on the contrary, whenever
he found any of the children about the yard or premises,
he ordered and drove them away. Neither of the defendants

was at the premises on the occasion in question. They, however, testified that they had not, nor had Pappas at any time in their presence, invited the plaintiff or any of the boys on their premises or to the milkhouse or to wash bottles or to do anything else, and that whenever they saw any of the children about the yard or premises they ordered them away.

The evidence given on behalf of the plaintiff that on the occasion in question Pappas had requested plaintiff and his companion to come to the milkhouse and wash bottles, and more especially that he had requested and directed the plaintiff and his companion to drive the horse in the barn, was objected to by the defendants chiefly on the ground that it was not shown that the giving of such request ∙ or directions was in the course or within the scope of the employment of Pappas, or that Pappas had any authority to make any such request or to give any such directions, and as further made to appear that Pappas had no such authority, and that, if any such request was made or direction given by him, it was solely for his own convenience and for his personal interest, and not for the use or benefit of either of the defendants. And for the same reason it also is urged that there was not sufficient evidence to show that the defendants or either of them had requested or directed the plaintiff to drive the horse in the barn, and hence no evidence to show that the defendants were or either of them was guilty of the charged negligence in such particular, and thus their motions for a directed verdict on such charged negligence and for a new trial ought to have been granted. All such rulings are assigned as error, and are presented for review.

We think the complaint of defendants in such particular is well founded. As indisputably shown by the record, Pappas was a mere employee of the defendants employed by them to drive a milk wagon in delivering and distributing milk, and in that connection to take care of the horses driven

by him and to wash bottles and do other work about the milkhouse. His employment did not carry with it any right or authority to invite or employ boys or any one to do anything about the milkhouse or with or about the horses of the defendants or to do anything in any particular in connection with the defendants' business. And on the record it is clear that he had such direct or express authority. Thus his request that the plaintiff and his companion wash bottles, or his direction that they drive the horse in the barn, was not within the scope of his employment, and was wholly unauthorized, and therefore the defendants cannot be held liable for any injury resulting from any such alleged negligence. *Raible* v. *Hygienic Ice Co.,* 134 App. Div. 705, 119 N. Y. S. 138; *Keating* v. *Michigan Cent. R. Co.,* 97 Mich. 154, 56 N. W. 346, 37 Am. St. Rep. 328; *Dover* v. *Mayes Mfg. Co.,* 157 N. C. 324, 72 S. E. 1067, 46 L. R. A. (N. S.) 199; *Zampella* v. *Fitzhenry,* 97 N. J. Law, 517, 117 A. 711, 24 A. L. R. 666 and notes thereto.

The respondent, however, asserts that, since the case was submitted to the jury on all of the alleged acts of negligence and on separate interrogatories with respect thereto which the jury were required to answer, "(1) A vicious horse known to be such; (2) a horse left unconfined and unattended in the clearing where children of tender years could come in contact with it; (3) sending the plaintiff to drive the horse in; (4) permitting the plaintiff to attempt to drive the horse in," all of which were separately answered by the jury, "Yes," and the jury also finding a general verdict finding "the issues in favor of the plaintiff and against the defendant and assessing his damage at $1,-115.00," the verdict is not alone dependent upon the negligence alleged in the amendment to the complaint, and may be upheld on the other alleged acts of negligence, leaving the horse loose and unattended, known to be vicious and addicted to kicking, in an uninclosed portion of the defendants' premises, where children were known to frequent and play. There are several answers to such

a contention. The evidence just considered, without some foundation laid or showing made that the acts of Pappas calling the plaintiff and his companion from the railroad depot grounds to wash bottles, and directing them to drive the horse in the barn, were within either the implied or express authority of Pappas or within the scope of his employment, was improperly received. That such evidence was of harmful and prejudicial effect, and had a tendency to influence, not only the general verdict found by the jury, but also the answers made to interrogatories submitted to them, cannot well be doubted; and on the record it cannot be said that such objectionable evidence did not so influence the jury in arriving at their verdict. In the next place, the direct and proximate cause of the injury was the unauthorized acts of Pappas calling and requesting the plaintiff and his companion from the depot grounds, where they were in a place of safety, to come to the milkhouse and on the premises where the horse was, and directing them to drive the horse in the barn. It is clear that, had it not been for such unauthorized acts, and especially directing the plaintiff and his companion to drive the horse in the barn, the accident and injury would not have happened. Just as clear is it that the presence of the plaintiff or of his companion at or about the uninclosed premises of the defendants on the occasion in question was not to play or was otherwise occasioned from any cause other than from the unauthorized acts of Pappas. Thus whatever negligence there may have been in temporarily leaving the horse loose and unattended in the uninclosed portion of the premises near the barn was not the direct or proximate cause of the injury.

The evidence as to the disposition of the horse was in marked conflict. On behalf of the plaintiff two witnesses, boy companions of the plaintiff, testified that they saw the horse at different times prior to the accident lay back its ears and "snap and bite" at persons passing near the horse —bit the sweater of one of them—another boy testified that he at one time heard horses kick in the barn, but on cross-

examination testified he could not say whether it was the horse in question or another horse which did the kicking, and another boy testified he on several occasions saw the horse loose in the barnyard of the defendants "playing around, and kicking around," but not that any one was near or about, and at no time saw the horse bite or kick at any one.

The defendants owned the horse for about three years. They testified, as did their employee and the prior owner from whom the defendants purchased the horse and others familiar with the horse, that he was gentle, not given to kicking or biting, and that at no time had they known or heard that the horse at any time had bitten or snapped or kicked at any one. The horse was owned by the partnership and was used in the partnership business. The father and mother of the plaintiff, over the objections of the defendants Makrakis and of the partnership, were permitted to testify that on the same day or evening after the accident the defendant Furgis, who had called at their residence to see how the boy was, in the course of a conversation stated that "he would send the horse to the ranch as it was mean to the drivers and was not safe around the dairy," and that the horse had "kicked at the drivers and was mean around the dairy and was not safe to be there."

It was urged that such statements were not shown to have been made by Furgis in the course or in pursuit of any partnership business or matter or while he was acting for or on behalf of the partnership, and hence what was then stated or declared by Furgis, while binding on him, yet was in no sense the speech or act of the partnership or of Makrakis, and therefore was not admissible as against either the partnership or Makrakis.

We think the contention is well founded. The rule is that the admissions of one copartner in respect to the joint business are competent against the firm and its members, but to render such admissions competent he must be acting as

a partner about a partnership matter, or the admission must be made in relation to matters within the scope of the partnership. 1 Ency. Evidence p. 579; 22 C. J. 403; 1 Elliott on Evidence 369; 2 Jones Comms. on Evidence (2d Ed.) 1712. The rule is well illustrated and stated in the case of *State* v. *Salmon,* 216 Mo. 466, 115 S. W. 1106. The evidence here shows that the admissions or statements made by Furgis, and as testified to by the parents of the boy, were not made under such circumstances. The making of any of such statements or admissions was denied by Furgis. The admission of such testimony as against Makrakis and the firm was not only erroneous, but was prejudicial.

It, however, is urged by the respondent that, though the testimony was not admissible as evidence of the facts declared by Furgis, that the horse was mean to the drivers, was not safe to be around the dairy, and had kicked at the drivers, yet was competent to show that Furgis, a member of the firm, had knowledge of the alleged vicious propensities and character of the horse. It undoubtedly is true, as contended by the respondent, that to prevail he was not only required to show that the horse was vicious, but also that defendants, prior to the accident, had knowledge of such propensities and character of the horse, and that proof that one member of a firm had such knowledge was knowledge of the firm or partnership. All that may readily be conceded. But such knowledge must be proven by competent, and not by incompetent, evidence. The ultimate fact to be established was the knowledge of the partnership. That may be established by proof that one member had knowledge. But the partnership had the right to insist that as to it the proof be made by competent evidence. Such proof could be by the testimony of the member having the knowledge, by proof of any fact or circumstance tending to show he had such knowledge, or by proof of a statement, declaration, or admission made by him in the course of partnership business, and while transacting business for it. But, if Furgis chose to talk about the character of the horse at a

time when his speech in no sense related to any partnership matter or business, and while he in no sense was acting for the partnership or doing anything for it or on its behalf, his speech was his speech and not that of the partnership, and hence not binding on it. What he may have declared under such circumstances is not admissible as against the partnership or another member to prove any material fact. As to them it is not admissible for any purpose. To urge it was admissible, not as evidence of the facts declared, not as evidence of the vicious character or propensities of the horse, but to show that one of the partners had knowledge of such character and propensities, is to say that such statements as against the partnership were admissible to prove a particular material fact, but none other, when in truth such statements were inadmissible to prove anything against the partnership. Receiving the objectionable evidence against the partnership was in effect but to permit the plaintiff to prove the character and propensities of the horse by declarations and statements of a member of the firm which, when made in no particular, related to partnership business or matters. Since such material fact could not be established in such manner because the statements were not made in the course of the partnership business, it for the same reason follows that no other material fact against the partnership could be established in such manner. We are therefore of the opinion that the judgment must be again reversed and the case remanded for a new trial. Such is the order. Costs to the appellant.

ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.

CHERRY, C. J., concurs in the judgment.