## LOONEY v. BINGHAM DAIRY et al.

No. 4537.   Decided October 15, 1927.   (260 P. 855.)

*F. W. James* and *H. L. Mulliner*, both of Salt Lake City, for appellants.

*Clawson & Elsmore*, of Salt Lake City, for respondent.

HANSEN, J.

This is an appeal from a judgment in favor of the plaintiff against the defendants James Makrakis and Chris Furgis, in which judgment plaintiff recovered for a personal injury.

The plaintiff, in his complaint, alleges in substance that the plaintiff is a minor and that May Jane Looney, his mother, is his guardian; that James Makrakis, Nick Makrakis, Chris Furgis, and Louis Furgis were at the time of the injury complained of engaged in conducting a dairy at Bingham, Utah, under the firm name of the Bingham Dairy; that the defendants maintained in the town of Bingham Canyon, Utah, a dairy station consisting of a barn and other buildings adjacent to an open space not occupied by any buildings; that the open space not occupied by buildings was at the time of and prior to the injury to plaintiff frequented by many persons, including children, who passed through and played upon the same; that the defendants knew said space was being so used; that the defendants were the owners of a horse which they used in their dairy business; that the horse so owned and used by the defendants was vicious and mean and accustomed to striking and

kicking, and that the defendants knew or ought to have known that said horse was vicious, mean, and addicted to kicking; that it was the duty of the defendants to keep said horse so confined that it would not injure any children, but notwithstanding such duty the defendants carelessly and negligently permitted said horse to run loose and unattended in said clearing; that while running loose in the clearing the horse kicked the plaintiff in the face, thereby causing him serious injury.

The defendants in their answer admitted that May Jane Looney is the guardian of Ambrose Looney; that two of the defendants, James Makrakis and Chris Furgis, are copartners engaged in the dairy business; and that they operate a dairy station as alleged by the plaintiff. They deny generally the other allegations of the complaint, and allege that any injury that plaintiff may have received was due to the negligent and careless acts of the plaintiff.

The plaintiff's evidence tended to establish the following facts: That James Makrakis and Chris Furgis at the time of plaintiff's injury were copartners engaged in the dairy business, and that they maintained a dairy station in Bingham Canyon, Utah; that Nick Makrakis and Louis Furgis, the other two defendants named in the complaint, were not members of the copartnership, but were employed by the other defendants who constitute the partnership; that on or about May 23, 1924, the plaintiff and some other boys were playing ball near the Denver & Rio Grande depot adjoining the Bingham Dairy, Bingham Canyon, Utah; that a man by the name of Pete Pappas drove one of the Bingham dairy milk wagons into the yard near the barn of the Bingham dairy; that he unhitched the horse, took off the harness, and turned the horse loose; that Pete Pappas called the plaintiff and another boy over to wash bottles, and the boys went into the dairy house; that after they had washed the bottles Pete Pappas came in and told the boys to go out and chase the horse into the barn; that the boys went out where the horse was eating hay from a manure

wagon; that the plaintiff went up behind the horse and his companion went to one side of the horse, threw up his hands, and said, "Shoo!" that thereupon the horse kicked the plaintiff, causing his serious injury; that at the time the plaintiff was kicked the horse was a short distance from defendant's barn and near a neighboring barn; that children often play in and about the barn of the defendants as well as the neighboring barn where the horse stood at the time it kicked plaintiff.

The father and mother of the plaintiff both testified that the defendant Chris Furgis came to their home either the night of or the night following plaintiff's injury; that in the conversation then had the defendant Chris Furgis stated that he was sorry that the horse had kicked the boy; that the horse was mean to the men, and it was not safe to be around because it kicked at the men who were working with it.

The plaintiff at the time of the injury was between 8 and 9 years of age.

The defendants offered evidence tending to show that the horse in question was 13 or 14 years of age and was of a gentle disposition. Chris Furgis denied that he stated to the parents of plaintiff that the horse in question was mean or that it had ever kicked at any one so far as he knew. He testified that he had driven the horse for some years. Defendants and other witnesses also denied that the plaintiff or other boys had ever been asked to wash bottles, but, on the contrary, that defendants had frequently ordered boys to leave their premises. The evidence of the defendants was also to the effect that one Pete Pappas had left the horse standing at a tub drinking water while he went up stairs to get some keys; that he was gone about 5 minutes and when he came down stairs the horse was still drinking; that a neighbor of defendants keeps about 35 head of horses in and about the premises where the horse stood at the time it is claimed the plaintiff was kicked.

At the conclusion of the evidence plaintiff asked leave to file an amendment to the complaint by alleging that the defendants were negligent in requesting the plaintiff to chase their horse into the barn. The trial court refused to permit the amendment, but as no error is assigned on account of such ruling we are not called upon to consider this phase of the case. The action was dismissed as to the defendants Nick Makrakis and Louis Furgis.

The defendants on this appeal have two assignments of error involving the sufficiency of the evidence to justify the verdict. At the conclusion of plaintiff's evidence in chief defendants moved for a nonsuit, and at the conclusion of all of the evidence they requested the court to direct a verdict in their favor. The trial court denied the motion and refused the request, and such rulings are assigned as error.

It is contended that there is no evidence to support a finding that the horse in question was of a vicious nature with a propensity to kick, or that the defendants knew such fact. The father and mother of the plaintiff both testified that the defendant Chris Furgis stated to them that the horse was not safe to be around because he kicked at the men who were driving it. The defendants testified that they had driven the horse. If the jury believed that defendant's horse kicked the plaintiff under the circumstances testified to by the boy who saw the plaintiff injured, they may well have considered such fact as tending to show the horse was vicious, because domestic animals usually have dispositions that do not readily change. Defendants earnestly contend that any admissions of Chris Furgis as to the propensity of the horse in question were not admissible against the copartner James Makrakis. This evidence, however, was admitted against all of the defendants, and its admission is not assigned as error. It was clearly admissible against the defendant Chris Furgis. It may well be conceded that there is merit to the contention

that the admissions of Chris Furgis under the circumstances testified to in this case are not admissible against the defendant James Makrakis, but if James Makrakis desires the question reviewed he must assign the admission of such evidence against him as error. Unless error is assigned, it will not be considered even though it is argued in counsel's brief. *Beatty* v. *Shelly*, 42 Utah 592, 132 P. 1160. We are therefore of the opinion that there is substantial evidence tending to support a finding that the horse in question was vicious in that he had a propensity to kick, and also that the defendants knew of such fact.

In reaching this conclusion we have considered the alleged statements of Chris Furgis as to the propensities of the horse in question as evidence against both defendants. In so doing, however, we do not hold that the alleged statements of Chris Furgis were properly admitted against the defendant James Makrakis. There being no error assigned on account of the admission of this evidence against both of the defendants, we are precluded from reviewing the admission of the same, and therefore express no opinion as to whether or not such evidence was properly admitted against the defendant James Makrakis.

All of the other assignments of error relied upon by the defendants involve the instructions of the court to the jury.

Defendants requested the court to give the following instruction:

"You are further instructed that before the plaintiff can recover in this action, he must prove, by a preponderance of the evidence, that the said horse was of a vicious nature and had the disposition and propensity of kicking at people under the circumstances in this case, and that the owners of the said horse had notice and knew of the horse's viciousness and propensities to kick under these circumstances."

The requested instruction was refused, and such refusal is assigned as error.

The trial court gave the following instruction:

"If you find from the evidence, first, that defendants' employee, Pete Pappas, was negligent in turning the horse loose in the clearing; second, that while loose in the clearing it kicked Ambrose Looney; third, that Ambrose Looney was rightfully in said clearing; and, fourth, that Ambrose Looney was not guilty of contributory negligence, then you will find for the plaintiff."

The defendants excepted to this instruction and assign as error the giving of the same.

It is contended by appellants that the fact that the horse was loose was not, and under the evidence could not have been, the proximate cause of the injury to the plaintiff, and that the plaintiff is not entitled to recover unless the jury found that the horse in question has a disposition to kick, and such fact was known to the defendants, or one of them, prior to the time plaintiff was injured. We are of the opinion that the appellants are entitled to prevail on both contentions. The plaintiff's evidence shows that the horse was standing and eating hay at the time the plaintiff was kicked, and that it continued to so stand after it kicked. Had the horse been tied to the wagon by means of a rope, strap, or halter, the injury would in all probability have occurred in exactly the same way that it is claimed it did occur so long as the hind legs of the horse were free to kick. The proximate cause of plaintiff's injury was, of course, the kicking of the horse, and not the fact that he was loose. It is not claimed in this action that the horse was unlawfully at the place where it stood when plaintiff was injured. It is a general rule of law that when a domestic animal is rightly at the place where the injury occurs, the owner is not liable unless the viciousness of the animal and knowledge of such fact on the part of the owner are shown. 3 C. J. § 321, p. 842; 1 Thompson's Comm. Law of Neg. § 842, p. 777; 1 R. C. L. § 33, p. 1089; 1 A. L. R. 1114, and cases cited in footnotes to the various texts. If, however, the owner is guilty of negligence in handling the

animal, he may be liable regardless of scienter, provided such negligent handling is the proximate cause of the injury, but, as above stated, in the instant case there is no causal relation between the fact that the horse was not tied up in the usual manner and the fact that the horse kicked the plaintiff.

In the absence of knowledge on the part of the defendants, or one of them, that the horse was vicious the defendants were not at fault, and even though it should be said that they were negligent in not tying the horse, their negligence in this respect did not bring about plaintiff's injury. The complaint is apparently drawn and the action was tried upon the theory that before plaintiff can recover he must establish the fact that the horse in question was vicious and likely to cause injury, and also the fact that the defendants knew of its vicious propensities prior to the time of the injury. We are of the opinion that the complaint does not state a cause of action against the defendants without an allegation of vicious propensities of the horse and scienter. Upon both the disposition of the horse and scienter there was a conflict in the evidence, and these issues should have been submitted to the jury. The instruction given, which is quoted here, does not require the plaintiff to establish either that the horse was vicious or scienter.

It is contended by respondents that, even though it be conceded that the instruction in question is improper, it was not prejudicial. After the court stated the issues to the jury, the following instruction was given:

"In order to recover in this action the burden is on the plaintiff to prove by a preponderance of the evidence that his injury was proximately caused by the carelessness or negligence of the defendants, and that said carelessness or negligence consisted of some one or more of the acts or omissions on the part of the defendants alleged in the complaint as negligence; and, secondly, the extent of such injury and the amount of damage resulting therefrom; and in this case,

if you find that the preponderance of the evidence thereon is equally balanced, you should find such issue for the defendants."

It is argued by respondent that this instruction adequately submitted to the jury the question of scienter. We do not find anything in the instruction relied upon by respondent, or elsewhere in the court's instructions to the jury, requiring the plaintiff to establish the vicious propensities of the horse or scienter as a condition of plaintiff's right to recover. The giving of the instruction which is assigned as error does not require the plaintiff to prove either the vicious propensities of the horse or scienter, but, on the contrary, directs the jury to find for the plaintiff, if at all, upon the theory of negligence in turning the horse loose in the clearing. We do not see wherein the court's instructions are inconsistent, but if it should be conceded that one instruction requires the plaintiff to establish the vicious propensities of the horse and scienter, and another instruction does not require a finding of such facts, the respondent would not be in any better position. If the instructions are inconsistent in that one correctly states the law and the other incorrectly states the law, it is impossible to ascertain which instruction the jury followed in arriving at their verdict, and the verdict must be set aside unless the improper instruction is not misleading or was given at the request of the party complaining, a situation which is not here presented. 1 Randall's Instructions to Juries, §§ 427, 430, page 766 et seq.; *Konold* v. *Rio Grande W. Ry. Co.*, 21 Utah 379, 60 P. 1021, 81 Am. St. Rep. 693.

In the instant case the defendants requested an instruction requiring the plaintiff, to establish the viciousness of the horse and scienter before he could recover, but the same was refused. The requested instruction above quoted, which was refused, is somewhat more favorable to the defendants than they were entitled to have given, in that the viciousness of the horse and scienter were

limited to the circumstances of this case. It is sufficient if the act or acts done are such as to furnish a reasonable inference that the animal is likely to commit an act of the kind concerning which the action is brought. 1 R. C. L. § 34, p. 1091; 3 C. J. § 378, p. 118.

We are of opinion that before plaintiff is entitled to recover a judgment against the defendants, under the facts and circumstances of this case, it is necessary for the jury to find, among other facts, that the horse in question was of a vicious or dangerous disposition, and that the defendants, or one of them, knew of such fact or had seen or heard of facts sufficient to convince a person of ordinary prudence of the animal's vicious disposition, before the injury occured. The failure of the trial court to so instruct the jury was prejudicial error. It is therefore ordered that the judgment of the court below be and the same hereby is reversed, and the cause is remanded to that court, with directions to grant a new trial. Defendants to recover costs.

THURMAN, C. J., and CHERRY, STRAUP, and GIDEON, JJ., concur.