## LOONEY v. FURGIS et al.

No. 5157. Decided July 31, 1931. (2 Pac. [2d] 112.)

F. W. James, of Salt Lake City, for appellants.

Irwin Clawson, of Salt Lake City, for respondent.

ELIAS HANSEN, J.

On two prior occasions this cause has been before us on appeal by the defendants. *Looney* v. *Bingham Dairy et al.,* 70 Utah 398, 260 P. 855; Id. 75 Utah 53, 282 P. 1030. The plaintiff has again secured a judgment and the defendants have appealed. On this appeal the defendants claim the judgment should be reversed; because the evidence does not justify the verdict, because the court erred in its instructions to the jury, and because the trial court erred in admitting certain evidence over the objection of the defendants. In the main the evidence brought here for review on this appeal is the same as the evidence involved on the prior appeals. The action was brought by Mary Jane Looney as guardian of Ambrose Looney, a minor. At the time of the injury complained of, Ambrose Looney was between 8 and 9 years of age. At that time the defendants were copartners engaged in conducting a dairy and delivering milk to the inhabitants of Bingham, Utah. One Pete Pappas was employed by the defendants to assist them in conducting their business. On or about May 23, 1924, Ambrose Looney and some other boys were playing ball near the Denver & Rio Grande depot adjoining defendants' dairy. Pete Pappas came in from delivering milk with

one of the dairy wagons. He unhitched the horse and turned it loose. According to the evidence of the plaintiff, he then called Ambrose Looney and another boy over to the building where the milk and bottles were kept and asked them to wash bottles. After they had washed the bottles, Pappas asked them to go out and chase the horse into the barn. They went out where the horse was eating hay from a wagon. Ambrose went up behind the horse. The other boy went to the side of the horse, threw up his hands, and said, "Shoo." Thereupon the horse kicked the Looney boy in the face and seriously injured him. This action was brought to recover for the injury thus inflicted. The complaint as originally drawn was founded upon the alleged negligence of the defendants in keeping a horse known by them to be vicious in a place where children were accustomed to play. On the first appeal the judgment was reversed because of error of the trial court in instructing the jury as to the law applicable to the pleadings and evidence then before the court. After the judgment was reversed the first time and the case remanded for a new trial, the complaint was amended, and in addition to the acts of negligence charged in the original complaint the defendants were charged with negligence in requesting the Looney boy to drive the horse into the barn. Upon the second appeal the judgment was reversed because the evidence failed to show that defendants' employee, Pete Pappas, was authorized to request the Looney boy to drive the horse into the barn, and also because of error of the trial court in admitting in evidence as against the partnership a statement of one of the copartners while not acting for the partnership. On this appeal the defendants urge that the evidence is insufficient to show that the horse in question was vicious or that the defendants had knowledge of such fact. It is further urged that the evidence fails to show that Pete Pappas had authority from the copartnership to employ or request Ambrose Looney to drive the horse in question into the barn, and that the evidence also fails to show that Pete Pappas was acting within the scope of his employment when

he employed or requested the Looney boy to drive the horse into the barn.

There is ample evidence in the record to justify the jury in finding that the horse which kicked the Looney boy was vicious and that the defendants had knowledge of such fact. Billie Burke testified that he had seen the horse bite and kick; that upon one occasion the horse was standing near the sidewalk while milk was being delivered to customers, when one Delbert Bollinger walked by on the sidewalk and the horse bit him; that on other occasions he had seen the horse kick the barn, the bars, and other horses; that on another occasion the horse chased a man called Deak around the yard; that on another occasion he saw him chase Blaine Steele and attempted to bite him; that upon another occasion when the defendant Chris Furgis was unhitching the horse it kicked at him; that when the horse was driven into the dairy the driver "would have to get out of the wagon and grab the horse by the bridle, and back him into the dairy. He was mean backing. He wouldn't stop." That when children passed near the horse on their way to school it would throw back its ears and try to bite them. William Wyatt testified that he had seen the horse try to bite and kick people who came near him; that on one occasion the horse chased Mr. Wyatt and tried to kick him. Vern Sorenson testified that he saw the horse on the street hitched to a milk wagon when it tried to bite a child that was walking down the street. Lee Hanson testified that he saw the horse start to chase a little girl who was crossing the street and that the defendant Chris Furgis came out and stopped the horse from injuring the child. There is other evidence to the same effect. The evidence tending to show that the horse attempted to and did bite people was admitted over defendants' objections. The admission of such evidence is assigned as error. We are of the opinion that such evidence was properly admitted. Plaintiff's complaint is founded upon the alleged negligence of the defendant in directing the Looney boy to drive the horse into the barn. If the defendants knew the horse was prone to bite,

such fact might well be considered by the jury in determining whether the defendants were or were not negligent on the occasion complained of. The disposition of the horse with respect to its biting proclivities was a proper subject-matter of inquiry as it might well increase the probability of the boy being injured while driving it into the barn.

It is also urged that there is no evidence that Pete Pappas had authority from the copartners or either of them to employ or request the Looney boy to drive the horse into the barn at the time complained of. Plaintiff called a number of witnesses who testified that prior to the time the Looney boy was injured Pete Pappas and the defendants almost daily requested boys who were playing near the dairy to wash bottles and tend the horse which belonged to the defendants. That at times Pete Pappas had made such requests in the presence of the defendants, and that boys had responded to the requests and rendered services in washing and topping bottles and tending the horse while one or both of the defendants were present. For rendering such services the boys were usually given some milk or paid a small sum of money. The mere fact that Pete Pappas was employed by the defendants to deliver milk did not authorize him to engage the service of the Looney boy for and in behalf of the copartners to drive the horse on the occasion in question. Such was the holding of this court on the second appeal. The record before us on this appeal, however, shows when viewed in the light of plaintiff's evidence, that on various occasions Pete Pappas secured the services of boys to assist in conducting the business of the copartners; that the copartners knew that Pappas was securing such services and paying therefor with milk which belonged to the copartners. The services so rendered and paid for were, according to plaintiff's evidence, at times solicited by Pappas and at other times by the defendants. Such services were always accepted without objection by the defendants. These facts are sufficient to support the inference and finding of the jury that Pete Pappas had authority from the copartners to secure the

services of the Looney boy at the time complained of. 39 C. J. 1271; 21 R. C. L. 860; and cases cited in the footnotes to the texts. Complaint is also made because the court instructed the jury as to the authority of a general and of a special agent. It may well be that such instruction was not necessary, but we are unable to see how it could be prejudicial to the defendants. The jury was instructed that: "In order for the plaintiff to recover in this case, he must prove by a preponderance of the evidence that Pete Pappas was acting within the scope of his authority in sending Ambrose and Billie out to drive in the horse, and, in ascertaining whether he was so authorized or not, you may consider all the facts and circumstances in the case as shown by the evidence." The instruction thus given is a correct statement of the law.

Other errors are assigned, but they are without merit.

The judgment is affirmed. Respondent is allowed her costs on appeal.

CHERRY, C.J., and STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.