2000 UT 103

**Arielle PULLAN, By and Through her parent and natural guardian, Paula PULLAN, Plaintiff and Appellant,**

v.

**Jane STEINMETZ and Dimple Dell Ranchettes Owners Association, Defendants and Appellees.**

No. 990040.

Supreme Court of Utah.

Dec. 29, 2000.

Gregory J. Sanders, Salt Lake City, for Pullan.

Donald J. Purser, Shane Norris, Salt Lake City, for Dimple Dell Ranchettes Owners Association.

Brett G. Pearce, Salt Lake City, for Steinmetz.

HOWE, Chief Justice:

## INTRODUCTION

¶ 1 Plaintiff Arielle Pullan, by and through her parent and natural guardian, Paula Pullan, appeals from the trial court's grant of summary judgment to defendants Jane Steinmetz and Dimple Dell Ranchettes Owners Association (the "Association"). Plaintiff brought this action to recover damages for injuries she sustained while feeding Steinmetz's horse, Rocky, at the Association's stables. The trial court held that defendants were not liable as a matter of law.

## BACKGROUND

¶ 2 Plaintiff, a twelve-year-old girl, visited her friend Rachel Condie, who lived in a residential subdivision in which there was a children's playground located near horse stables maintained by the Association. Rachel's family was a member of the Association and had access to the stables. Plaintiff and Rachel entered the stables to feed the horses as they had done approximately five times before. They took some oats in their hands from an unattended Rubbermaid garbage can in the stables to feed the horses. Plaintiff approached one of the horses, Rocky, and held out her open hand allowing him to eat

the oats. Rocky bit plaintiff's hand, severing the top of her left-hand ring finger leaving it permanently disfigured.

¶ 3 Plaintiff brought this suit against the Association and Rocky's owner, Jane Steinmetz. After discovery, both defendants moved for summary judgment, which the trial court granted. Plaintiff appeals.

## ANALYSIS

■ ¶ 4 Summary judgment is proper when there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *See Thompson v. Jess,* 1999 UT 22, ¶ 12, 979 P.2d 322; Utah R. Civ. P. 56(e).

¶ 5 Plaintiff assails the summary judgment, contending that defendants should be held legally responsible for her injury under any one of three grounds: strict liability, negligence as set forth in the Restatement (Second) of Torts, §§ 360 and 518 (1976), and the attractive nuisance doctrine. We shall discuss each of these grounds seriatim.

## I. STRICT LIABILITY

■ ¶ 6 Plaintiff contends that this court should modernize its case law and hold owners and keepers of horses strictly liable for injuries caused by them "where horses are kept as hobbies and pets, not necessities in an urban residential setting." Plaintiff refers the court to Utah Code Ann. § 18–1–1 (1998),[1] which imposes strict liability on owners and keepers of dogs.[2] She argues that public policy now favors extending strict liability to owners and keepers of horses for injuries caused by them when they are kept in urban residential areas and are not relied upon for transportation as they were one hundred years ago.

¶ 7 We eschew the invitation to extend strict liability to owners and keepers of horses. The legislature imposed strict liability on owners and keepers of dogs for important reasons that would not support extending strict liability to owners and keepers of horses. Most importantly, while dogs are capable of injuring or killing poultry and small domestic livestock such as sheep and goats, horses do not have that predatory trait. Additionally, when section 18–1–1 was originally enacted in 1898, leash laws were not common and many dogs roamed at large without restraint. Domestic horses have not usually been allowed to roam free, but customarily have been corralled and pastured. Section 18–1–1 and section 18–1–3, which allows any person to kill a dog that is attacking, chasing, or worrying any domestic animal or fowl that has a commercial value, appear to have been enacted to protect the interests of those who raise poultry and livestock. Horses do not pose the same threat. None of the reasons the legislature had for holding owners and keepers of dogs strictly liable would support our extending strict liability to owners and keepers of horses even when they are kept in a residential neighborhood for recreational purposes.

¶ 8 We are supported in our decision not to extend strict liability to horse owners and keepers by the Restatement (Second) of Torts, § 509 (1977), which imposes strict liability upon a possessor of a domestic animal only when the possessor knows, or has reason to know, that the animal has "dangerous propensities abnormal to its class." Plaintiff does not contend that Rocky falls into that classification. To the contrary, Rocky was a domesticated riding horse that Rachel, who had ridden him on two occasions, described as "not exactly gentle. He had a very forceful personality, but he wasn't vicious." That description of Rocky does not fit the description of a horse who has "dangerous propensities abnormal to its class," as required by section 509.

---

1. Every person owning or keeping a dog shall be liable in damages for injury committed by such dog, and it shall not be necessary in any action brought therefor to allege or prove that such dog was of a vicious or mischievous disposition or that the owner or keeper thereof knew that it was vicious or mischievous.... 
Utah Code Ann. § 18–1–1 (1998).

2. Section 18–1–1 changed the common law that owners and keepers of dogs were not liable unless they knew or had reason to know of the dog's propensity to bite. From that rule, grew the expression that a dog was entitled to its first bite.

## II.  NEGLIGENCE

¶ 9 The parties agree that the latest expression of this court as to the liability of an owner or keeper of horses is found in *Looney v. Bingham Dairy*, 70 Utah 398, 260 P. 855 (1927) (see also later appeals of the same case at 75 Utah 53, 282 P. 1030 (1929), and at 78 Utah 172, 2 P.2d 112 (1931)). In that case, this court held that "when a domestic animal is rightly at the place where the injury occurs, the owner is not liable unless the viciousness of the animal and knowledge of such fact on the part of the owner are shown." *Id.* at 857. Plaintiff concedes that she cannot meet that test for imposing liability on either Steinmetz or the Association. Instead, she urges us to relax the test for imposing liability announced in *Looney* and adopt as to Steinmetz, the owner of Rocky, the negligence standard contained in Restatement (Second) of Torts § 518 (1976). That section sets out the liability of a person who possesses or harbors domestic animals that are not known to be abnormally dangerous. That section states:

Except for animal trespass, one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if,

. . . .

(b) he is negligent in failing to prevent the harm.

¶ 10 Plaintiff contends that comment (h) to section 518 describes the duty to be imposed on defendant Steinmetz:

One who keeps a domestic animal that possesses only those dangerous propensities that are normal to its class is required to know its normal habits and tendencies. He is therefore required to realize that even ordinarily gentle animals are likely to be dangerous under particular circumstances and to exercise reasonable care to prevent foreseeable harm.

¶ 11 Plaintiff further urges us to adopt, as the standard of care to, be imposed on the Association, Restatement (Second) of Torts § 360 (1965), which states:

A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.

¶ 12 Plaintiff contends that if this court adopts and follows the rules for imposing liability contained in sections 518 and 360 of the Restatement, defendants should be charged with the knowledge that horses as a class have a propensity to bite while eating. Plaintiff further contends that under these sections, a jury question is presented as to whether defendants breached their duty by (1) not erecting barriers to the stables to keep children out where a children's playground was nearby, and (2) leaving in the stables horse feed in containers accessible to children who may be tempted to hand feed it to the horses.

¶ 13 We leave for another day the decision whether to adopt as law of the state the standards of liability contained in sections 518 and 360. Even under those standards, plaintiff cannot establish a prima facie case of negligence on the part of either defendant because she failed to provide any evidence that the harm was foreseeable. Plaintiff does not contend that either defendant had any knowledge that she or other children from families that did not belong to the Association were entering the stables and feeding the horses without permission. Without knowing that or having reason to know that, a jury could not find defendants negligent. According to Rachel, Steinmetz had allowed her to ride Rocky on two occasions and had seen her feed Rocky, although it is not clear whether Rachel was feeding him out of her hands on those occasions. Steinmetz raised no objection to Rachel's feeding Rocky nor warned her of any danger. However, Rachel's family was a member of

the Association, and Rachel had a right to frequent the stables. But, there is no evidence that Steinmetz knew that plaintiff or any other child whose family did not belong to the Association was accompanying Rachel to the stables and hand feeding the horses without permission or supervision. Simply maintaining a horse in a stable in a residential subdivision without any knowledge or any reason to know that a child from outside the Association was frequenting the stables and hand feeding the horses without permission or supervision is an insufficient basis on which to predicate negligence on the part of either defendant. This case is far different from *Dolezal v. Carbrey*, 161 Ariz. 365, 778 P.2d 1261 (Ct.App.1989), relied on by plaintiff, in which the court held that a jury question was presented under section 518 of the Restatement where the defendant put the plaintiff, a novice rider, on a quarter horse without adequate instructions as to how to ride and dismount. *See id.* at 1266–67.

## III.  ATTRACTIVE NUISANCE

¶ 14 Finally, plaintiff contends that the summary judgment entered against her was in error because a jury could have found defendants liable under the attractive nuisance doctrine as enunciated by prior cases of this court and as set forth in Restatement (Second) of Torts § 339. *See Whipple v. American Fork Irrigation Co.*, 910 P.2d 1218, 1221 (Utah 1996); *Loveland v. Orem City Corp.*, 746 P.2d 763, 771 (Utah 1987); *Weber v. Springville*, 725 P.2d 1360, 1365 (Utah 1986); Section 339 states:

> A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
>
> (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
>
> (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

> (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
>
> (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
>
> (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

¶ 15 For purposes of our analysis of the attractive nuisance doctrine, we will assume that plaintiff was trespassing when she entered the stables, even though she contends that she was the guest of Rachel Condie, whose family belonged to the Association.

¶ 16 Our initial inquiry is whether the horses in the stables were "artificial conditions upon the land." Restatement (Second) of Torts § 339 (1965). Of the few courts that have considered this question, a majority have held the attractive nuisance doctrine to be inapplicable as a matter of law. *See* Thomas R. Trunkner, Annotation, *Animals As Attractive Nuisance*, 64 A.L.R.3d 1069, 1070–71 (1975). Plaintiff relies upon *Hofer v. Meyer*, 295 N.W.2d 333, 336 (S.D.1980), where the court held that whether a horse kept in an enclosure in a residential area could constitute an artificial condition was a question for the jury. However, in *Hall v. Edlefson*, 498 S.W.2d 514, 516 (Tex.Civ.App. 1973), the court reached the opposite conclusion where a Shetland pony was kept on property adjoining that of the plaintiff whose seven-year-old son fell off the pony as he attempted to ride it without permission of the defendant. *See id.* at 516.

¶ 17 However, it is unnecessary for us to decide whether Rocky was an "artificial condition upon the land." Restatement (Second) of Torts § 339. Even if that assumption is made in favor of plaintiff, she cannot satisfy the requirement that "the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass." *Id.* at § 339(a). As stated earlier in this opinion, plaintiff

does not contend that either defendant had knowledge that she or other children were entering the stables without permission and feeding the horses. Nor can we find any basis to charge defendants with "reason to know" the same. As explained in the comment on clause (a) of section 339,

> It is not enough that the possessor "should know" of trespasses . . . in the sense that a reasonable man in his position would investigate to discover the fact. The possessor · is under no duty to make any investigation or inquiry as to whether children are trespassing, or are likely to trespass, until he is notified, or otherwise receives information, which would lead a reasonable man to that conclusion.

Plaintiff has not suggested that there was any notice or information given to defendants that would alert them that she or other children were entering the stables without permission and feeding the horses. This fact distinguishes the instant case from *Hofer v. Meyer*, 295 N.W.2d 333 (S.D.1980), relied on by plaintiff, where a three-year-old boy was kicked by a horse after he entered the yard with his dog where the horse was kept. *See id.* at 334. There was testimony in that case that children were occasionally seen in the area and that a child had earlier been seen chasing a horse in an adjoining pasture. *See id.* at 336. The court held that this testimony created a jury question as to whether the owner of the horse knew or had reason to know that children were likely to trespass on his property and excite the horse. *See id.* at 337.

¶ 18 Additionally, plaintiff cannot satisfy the requirement of clause (c) of section 339, that she did not "realize the risk involved in intermeddling with [the horse]." In her deposition she testified that· she had learned from her cousin that she had to hold her hand flat when allowing a horse to eat from it "so that they don't like bite your whole hand off." This testimony indicates that the twelve-year-old plaintiff adequately understood and appreciated the risk of allowing a horse to eat from her open hand. Plaintiff cannot meet the requirements of establishing

liability under the attractive nuisance doctrine.

¶ 19 Judgment affirmed.

¶ 20 Associate Chief Justice RUSSON, Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Chief Justice HOWE'S opinion.