2003 UT 18

**Judith Campbell JACKSON, Plaintiff and Appellant,**

v.

**Robert MATEUS and Kris Mateus, Defendants and Appellees.**

No. 20010387.

Supreme Court of Utah.

May 6, 2003.

Roger H. Bullock, Peter H. Barlow, Salt Lake City, for plaintiff.

Lynn S. Davies, Melinda A. Morgan, Salt Lake City, for defendants.

DURRANT, Associate Chief Justice:

¶ 1 This appeal concerns the liability of a cat owner for injuries caused by the actions of a domestic cat. Judith Campbell Jackson, who was bitten by the cat, appeals the district court's grant of summary judgment in

favor of Robert and Kris Mateus, the cat's owners. The district court held that the Mateuses had no duty to prevent their cat from attacking Jackson and therefore could not be held liable for negligence. We affirm.

## BACKGROUND

¶ 2 "In reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party .... We state the facts in this case accordingly." *Tretheway v. Miracle Mortgage, Inc.*, 2000 UT 12, ¶ 2, 995 P.2d 599 (citations omitted).

¶ 3 On the morning of January 15, 1996, Jackson noticed what she described as a "yellow tiger tabby house cat" sitting outside on the second-story deck of her home. Mistaking it for one of her own four cats, Jackson opened the sliding glass door and called to the cat. When the cat came to Jackson, she began petting it, but she quickly realized that it was not one of her own. The cat then bit Jackson's right hand. Prior to the incident, Jackson had a medically stable autoimmune disorder. As a result of the bite and subsequent infection, Jackson's preexisting autoimmune disorder was aggravated, causing her to undergo multiple surgeries and incur medical expenses in excess of $40,000.

¶ 4 The Mateuses concede for purposes of the summary judgment motion and this appeal that they own the cat that attacked Jackson. They have been the sole owners of the ten-year-old cat since it was a kitten. According to the undisputed facts, the cat had never bitten anyone, nor exhibited vicious or aggressive tendencies prior to the incident with Jackson.

¶ 5 Jackson brought this suit against the Mateuses alleging that they acted negligently in allowing their cat to roam freely and to attack her. The Mateuses filed a motion for summary judgment arguing that they were not liable for Jackson's injuries. The district court granted summary judgment in favor of the Mateuses, holding that they were not liable as a matter of law because they had no duty to restrain their cat. Jackson appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

¶ 6 Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c). On appeal, we review the district court's ruling on summary judgment for correctness. *Kessler v. Mortenson*, 2000 UT 95, ¶ 5, 16 P.3d 1225 (citations omitted).

### II. CAT OWNER LIABILITY

¶ 7 Jackson appeals the district court's order granting summary judgment to the Mateuses, contending that they were negligent in failing to restrain their cat at the time it injured her. To prevail on a negligence claim, a plaintiff must establish that the defendant owed a duty of reasonable care to him or her. *Williams v. Melby*, 699 P.2d 723, 726 (Utah 1985). "Absent a showing of duty, [the plaintiff] cannot recover." *Slisze v. Stanley–Bostitch*, 1999 UT 20, ¶ 9, 979 P.2d 317 (quotation and citations omitted). Jackson advances three bases for imposing a duty on the Mateuses: (1) the common law, as articulated in the Restatement (Second) of Torts § 518 (1977); (2) municipal law, as outlined in Salt Lake County, Utah, Ordinances §§ 8.04.210 and 8.24.030; and (3) state law, as enacted in the dog bite statute, Utah Code Ann. § 18–1–1 (1998). We will address each of these bases in turn.

### A. The Common Law: Restatement (Second) of Torts § 518

¶ 8 Jackson contends that the Mateuses had a duty under the common law, as articulated in the Restatement (Second) of Torts § 518, to exercise reasonable care in controlling their cat. She notes that in *Pullan ex rel. Pullan v. Steinmetz*, 2000 UT 103, ¶ 13, 16 P.3d 1245, we declined to adopt section 518, leaving that decision for another day. Contending that section 518 directly applies to this case, she argues that the day has now come to adopt the section. Additionally, she argues that our holding in *Pullan* supports her claim because the cat was not rightfully at the place where the injury occurred. The Mateuses argue that they had no duty under

either the common law or section 518 to restrain their cat because the harm was not foreseeable.

■ ¶ 9 Generally, absent some foreseeability of possible harm, the common law does not impose a duty on pet owners to restrain their animals. Under the common law, a pet owner is typically only "liable for the injuries caused by a domesticated animal where the owner knew or should have known of the animal's vicious or dangerous propensity." 4 Am.Jur.2d *Animals* § 96 (1995). However, some jurisdictions have held that an owner may be liable for failure to restrain their pets under certain limited circumstances. According to the Restatement (Second) of Torts § 518,

> one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if,
>
> (a) he intentionally causes the animal to do the harm, or
>
> (b) he is negligent in failing to prevent the harm.

¶ 10 We have never before addressed the liability of a cat owner. Jackson suggests that we should look to section 518 and our previous cases concerning liability of horse owners or keepers to extend liability to cat owners who allow their domestic cats to roam free.

¶ 11 In *Pullan*, we declined to adopt the standards of liability contained in section 518, but noted that even under those standards, the plaintiff would have failed because she did not provide any evidence to demonstrate that the harm was foreseeable. 2000 UT 103 at ¶ 13, 16 P.3d 1245. *Pullan* involved injury to a twelve-year-old child who was bitten by a horse while hand feeding it in its stable. *Id.* at ¶ 2. The child was not a member of the association that maintained the horse stables, but accompanied a friend who was a member and had access to the stables. *Id.* We held that the defendants were not negligent in failing to prevent the harm to the child because they did not know or have reason to know that children who were not members of the association were entering the stables and

hand feeding the horses without permission. *Id.* at ¶ 13. As in *Pullan*, the plaintiff in this case has failed to provide any evidence that the injury she sustained was foreseeable. Therefore, as in *Pullan*, we conclude it is unnecessary to adopt section 518 in order to decide this matter.

■ ¶ 12 While we are not presently inclined to adopt section 518, even under that standard, the Mateuses would not have had a duty to protect Jackson from their cat due to the absence of foreseeable harm. Jackson contends, however, that comment h to section 518 identifies a situation that would impose liability on the Mateuses given the facts of this case. According to comment h,

> [o]ne who keeps a domestic animal that possesses only those dangerous propensities that are normal to its class is required to know its normal habits and tendencies. He is therefore required to realize that even ordinarily gentle animals are likely to be dangerous under particular circumstances and to exercise reasonable care to prevent foreseeable harm.

Restatement (Second) of Torts § 518 cmt. h.

¶ 13 The comment goes on to describe particular circumstances that might fit within its meaning, such as when an animal is protecting its young or is injured. *See id.* Because of the owner's unique knowledge of the animal, an animal owner is placed on notice that he or she may be liable under these limited circumstances where it is foreseeable that an ordinarily gentle animal may attack. Jackson has not alleged that any particular circumstances existed that should have put the Mateuses on notice that their cat would be violent or that they needed to prevent it from coming into contact with Jackson. Rather, Jackson argues that *any* contact between a cat and a human being is fraught with danger. The chance meeting between a cat and a human stranger, where the human stranger initiates the contact with the cat, does not fall within the circumstances described by comment h. Such contacts occur frequently, are not normally dangerous, and, absent an owner's knowledge of particular facts that would render an injury foreseeable, do not present circumstances for which liability arises under comment h.

¶ 14 This view is supported by comment j of section 518. Comment j clearly indicates that the Restatement will not impose a general duty on pet owners who allow certain domestic animals to "run at large" if the animals are "unlikely to do harm."[1] Restatement (Second) of Torts § 518 cmt. j. Indeed, the comment specifically refers to cats as one of those domestic animals that owners are not required to restrain because they are unlikely to do harm if allowed to roam at large.

¶ 15 Not only has Jackson failed to present any evidence that the Mateuses' cat was vicious, she has also failed to show that the bite was foreseeable under any of the circumstances listed in section 518. Therefore, even if we were to adopt section 518, doing so would not impose a duty on the Mateuses because they had no knowledge or reason to know that their ten-year-old cat, who had never exhibited anything other than a docile disposition, might attack someone.

¶ 16 Jackson also argues that we should look to our previous holding in *Looney v. Bingham Dairy,* which was favorably cited in *Pullan,* wherein we stated that when an animal is "rightly at the place where the injury occurs" the owner is not liable for any harm unless the owner had knowledge of the animal's propensity for viciousness. 70 Utah 398, 405, 260 P. 855, 857 (1927). Here, Jackson contends by negative implication that the Mateuses are liable regardless of the foreseeability of the harm because their cat was trespassing on her property when the injury occurred. Jackson cites Utah Code Ann. § 10–8–64 (1999), which deals with livestock that run at large, and Utah Code Ann. § 4–25–4 (1995 & Supp.2002), which deals with sheep, cattle, horses, mules, asses, and swine, in support of her proposition that the cat was trespassing. These statutes were enacted to protect property owners from harm caused by large farm animals that are not generally allowed to roam freely in our society. Clearly, livestock pose a serious threat of harm to the property of others if they are allowed to escape their enclosures. Other courts have found that such statutes, though directly applying to livestock, have no application to domestic pets. *See Bolstad v. Pergeson,* 305 Ark. 163, 806 S.W.2d 377, 378 (1991). While agricultural animals pose a foreseeable risk if allowed to roam freely, cats generally do not.

¶ 17 Jackson mistakenly interprets our holdings in *Pullan* and *Looney* to mean that liability arises for the injuries solely because the animal was trespassing and contact between a human being and the animal was foreseeable, and that by analogy the Mateuses are liable because their cat's contact with human beings was foreseeable. However, what matters is not the foreseeability of human-animal contact, but the foreseeability that the animal would cause harm to others. *Looney* involved injury to a boy kicked by a horse while playing at a "dairy station." 70 Utah at 400–01, 260 P. at 855–56. The issue in *Looney* was whether the horse had a vicious nature with a propensity to kick and whether the defendants knew or should have known of this propensity. *See* 70 Utah at 403, 260 P. at 857. In *Looney* we could not have been more clear:

> before [a] plaintiff is entitled to recover a judgment against the defendants ... it is necessary for the jury to find, among other facts, that the [animal] in question was of a vicious or dangerous disposition, and that the defendants, or one of them, *knew of such fact or had seen or heard of facts sufficient to convince a person of ordinary prudence of the animal's vicious disposition,* before the injury occurred.

70 Utah at 408, 260 P. at 858 (emphasis added). While it is foreseeable that a horse with a propensity to kick would injure those

---

1. Comment j states as follows:

   There are certain domestic animals so unlikely to do harm if left to themselves and so incapable of constant control if the purpose for which it is proper to keep them is to be satisfied, that they have traditionally been permitted to run at large. This class includes dogs, cats, bees, pigeons and similar birds and also poultry .... [A]lthough the possessor or harborer of a dog or cat is privileged to allow it to run at large and therefore is not required to exercise care to keep it under constant control, he is liable if he sees his dog or cat about to attack a human being or animal or do harm to crops or chattels and does not exercise reasonable care to prevent it from doing so.

   Restatement (Second) of Torts § 518 cmt. j.

unaware and unsuspecting of such behavior, it is unforeseeable that a docile cat with no history of attacking others would bite if allowed to roam unrestrained.

■ ¶ 18 Additionally, we find it persuasive that no other jurisdiction has recognized a duty on the part of a cat owner to restrain or muzzle a domestic cat that has demonstrated no previous propensity to cause harm. *See Van Houten v. Pritchard*, 315 Ark. 688, 870 S.W.2d 377, 380 (1994); *Bischoff v. Cheney*, 89 Conn. 1, 92 A. 660, 661 (1914); *Fellers v. Carson*, 182 Ga.App. 658, 356 S.E.2d 658, 659 (1987); *Boyer v. Seal*, 553 So.2d 827, 832 (La.1989); *Goodwin v. E.B. Nelson Grocery Co.*, 239 Mass. 232, 132 N.E. 51, 52–53 (1921); *Rickrode v. Wistinghausen*, 128 Mich.App. 240, 340 N.W.2d 83, 85–86 (1983); *Clark v. Brings*, 284 Minn. 73, 169 N.W.2d 407, 414 (1969); *Lee v. Weaver*, 195 Neb. 194, 237 N.W.2d 149, 150–51 (1976); *Wignes v. Bottger*, 136 Misc.2d 490, 518 N.Y.S.2d 936, 938 (N.Y.Sup.Ct.1987); *Ray v. Young*, 154 N.C.App. 492, 572 S.E.2d 216, 219 (2002); *Spradlin v. Williams*, 107 Ohio Misc.2d 16, 736 N.E.2d 119, 120–21 (Ct.C.P. 1999); Cheryl M. Bailey, Annotation, *Liabilities for Injuries Caused by Cat*, 68 A.L.R.4th 823 (1989). Here, the attack by the Mateuses' cat was unforeseeable because there were no circumstances that alerted the Mateuses to the possibility that their cat would act aggressively. Hence, they had no duty to restrain it.

■■ ¶ 19 Accordingly, we conclude that summary judgment was proper because Jackson has failed to show any material fact on the issue of foreseeability that would prohibit a decision as a matter of law. Jackson did not produce any evidence tending to show that the Mateuses' cat had a propensity to attack or that such an attack was foreseeable. She argues that if we maintain this position, we will create a "one free bite" rule for cats. She contends that such a rule would focus foreseeability on whether the cat had bitten and injured someone previously. Foreseeability is not, however, premised exclusively on whether the action occurred before, but on whether by previous behavior such acts could have been expected. We hold that under common law an owner of a domestic cat is not liable for the unforeseeable actions of their cat. We therefore turn to the second basis asserted by Jackson for imposing liability on the Mateuses, namely, municipal law.

### B. Salt Lake County Ordinances

¶ 20 Alternatively, Jackson contends that even if the attack was unforeseeable under the common law, the Mateuses had a duty under Salt Lake County Ordinances (the "Ordinances") to either muzzle or restrain their cat when they allowed it off their property, and that their failure to do so is evidence of their negligence. Jackson argues that the Ordinances modify the common law rule, eliminating the requirement of foreseeability. She asserts that the plain meaning of the Ordinances is to impose a duty on all animal owners the instant their animal bites. Considering the Ordinances that Jackson cites as a whole, we conclude that there is no basis for imposing strict liability on the Mateuses and find no merit in this claim.

■ ¶ 21 It is a well-recognized principle that the common law may be modified by statute or ordinance. *See Hansen v. Utah State Ret. Bd.*, 652 P.2d 1332, 1337 (Utah 1982). "In interpreting the meaning of ordinances, we are guided by the standard rules of statutory construction." *Brown v. Sandy City Bd. of Adjustment*, 957 P.2d 207, 210 (Utah Ct.App.1998) (citation and alterations omitted). Accordingly, we first examine the plain language of an ordinance and resort to other methods of interpretation only if the language is ambiguous. *See id.* at 210–11. An ordinance should be applied according to its literal wording, unless such a reading is unreasonably confused, inoperable, or in blatant contravention of the express purpose of the statute. *See West Jordan v. Morrison*, 656 P.2d 445, 446 (Utah 1982) (citing *Gord v. Salt Lake City*, 20 Utah 2d 138, 140–41, 434 P.2d 449, 451 (1967)). We also note "that statutory enactments are to be so construed as to render all parts thereof relevant and meaningful, and interpretations are to be avoided which render some part of a provision nonsensical or absurd." *Millett v. Clark Clinic Corp.*, 609 P.2d 934, 936 (Utah 1980).

¶ 22 Jackson contends that the Mateuses are liable because they had a regulatory duty to restrain or muzzle their cat under section 8.24.030 of the Ordinances[2] since it was a vicious animal as defined by section 8.04.210 of the Ordinances. Section 8.24.030 forbids "the owner of any fierce, dangerous or vicious animal to permit [it] to go or be off the premises of the owner unless such animal is under restraint and properly muzzled so as to prevent it from injuring any person or property." Salt Lake County, Utah, Ordinances § 8.24.030 (1999). Section 8.04.210 defines a "vicious animal" as follows:

A. Any animal which, in a vicious and terrorizing manner approaches any person in apparent attitude of attack upon the streets, sidewalks, or any public grounds or places;

B. Any animal with a known propensity, tendency, or disposition to attach [sic] or to cause injury or otherwise endanger the safety of human beings or animals; or

C. Any animal which bites, inflicts injury, assaults or otherwise attacks a human being or domestic animal on public or private property.

Salt Lake County, Utah, Ordinances § 8.04.210. According to Jackson, the Mateuses' cat became a "vicious animal" under section 8.04.210(C) when it bit her, and the Mateuses therefore should be held liable because they allowed it off their premises without restraining or muzzling it as required by these ordinances.

¶ 23 Claiming that her interpretation does not necessarily impose strict liability, Jackson argues that the Mateuses' violation of the above Ordinances is evidence of their negligence. She suggests that the plain language of section 8.24.030 clearly imposed an obligation upon the Mateuses to restrain or muzzle their cat because it became a "vicious animal" the moment it bit Jackson. To accord the Ordinances the literal interpretation Jackson proposes would be to assign them circular logic and would, contrary to Jackson's argument, impose strict liability on all pet owners.

¶ 24 The reading of sections 8.04.210 and 8.24.030 that Jackson suggests would require all cat owners to muzzle and leash or otherwise restrain their cats because their pet, though docile and nonviolent, may potentially bite a person and thereby instantly become a "vicious animal." Under Jackson's interpretation, an owner would have no duty to muzzle or restrain his or her animal a split-second before an unanticipated and unforeseeable attack, but the owner would automatically be liable the moment his or her cat bit someone because it would instantly meet the definition of a "vicious animal." Jackson's reading of the Ordinances would require all animal owners to predict the unpredictable, thereby creating an absurd result.

¶ 25 Our obligation, however, is to construe these statutes so as to render all parts meaningful and to avoid nonsensical or absurd results. When the Mateuses allowed their cat to roam outside on the day of Jackson's injury, it did not fit within the definition of a "vicious animal." It had not approached any person in a terrorizing manner, it had no known propensity to attack, and it had not bitten any human being or domestic animal. Therefore, when the Mateuses' cat left their property, they had no obligation to restrain or muzzle it because that obligation only arises after owners have knowledge that their pet fits within the regulatory definition of a "vicious animal."[3]

¶ 26 Having rejected Jackson's contention that sections 8.04.210 and 8.24.030 of the Ordinances should be strictly interpreted,

---

2. Our analysis is limited to the Salt Lake County ordinances as they existed at the time of Jackson's injury. We note that a new Animal Control Ordinance was enacted by the county in April 2000.

3. We note that the Ordinances were intended to be read in a nuisance context. There is no suggestion that the framers of the Ordinances intended them to create strict liability in a private tort context, and we decline to read such liability into them. The only consequence of having a "vicious animal" is that it will be treated as a nuisance under section 8.24.010 if it is "kept contrary to Section 8.24.030." Salt Lake County, Utah, Ordinances § 8.24.010(B)(1)(b). If a "vicious animal" is kept contrary to section 8.24.010, the Ordinances simply direct "the director of animal services [to] seek a court order ... for the destruction of or muzzling of the animal." Id. § 8.24.030.

and that the Mateuses' failure to restrain or muzzle their cat constitutes evidence of their negligence, we turn to Jackson's third asserted basis for imposing liability upon the Mateuses, namely, state law.

### C. Dog Bite Statute

¶ 27 Lastly, Jackson contends that this court should eliminate the requirement of foreseeability of harm by extending Utah Code Ann. § 18–1–1 (1998) to cats. Section 18–1–1 imposes strict liability on owners and keepers of dogs.[4] We decline to do so. "When construing a statute, we must give effect to legislative intent. To that end, we presume that the [l]egislature used each term advisedly, and we give effect to each term according to its ordinary and accepted meaning." *Versluis v. Guar. Nat'l Cos.*, 842 P.2d 865, 867 (Utah 1992) (citations omitted).

¶ 28 Section 18–1–1 was originally enacted in 1898, and it specifically applies only to dogs. Jackson urges us to reconsider our previous refusal to extend the "dog bite" statute to animals other than dogs,[5] arguing that the reasons the legislature had for holding dog owners strictly liable support extending strict liability to cat owners. While the merits of this contention are debatable, it is a question for the legislature to decide, not this court. Based on the plain language of the statute, we hold that section 18–1–1 does not impose strict liability on cat owners.

### CONCLUSION

¶ 29 The Mateuses are entitled to summary judgment because there are no disputed material facts on the issue of foreseeability. Absent foreseeability, the Mateuses owed no duty to restrain their cat under the common law, municipal law, or state law. Because Jackson failed to present any evidence to contradict the Mateuses' position that the attack was unforeseeable, we conclude that the district court did not err in entering summary judgment for the Mateuses.

¶ 30 Judgment affirmed.

¶ 31 Chief Justice DURHAM, Justice RUSSON, Justice WILKINS, and Judge BILLINGS concur in Associate Chief Justice DURRANT's opinion.

¶ 32 Justice HOWE did not participate herein; Court of Appeals Judge JUDITH M. BILLINGS sat.

---

4. Section 18–1–1 states the following:
    Every person owning or keeping a dog shall be liable in damages for injury committed by such dog, and it shall not be necessary in any action brought therefor to allege or prove that such dog was of a vicious or mischievous disposition or that the owner or keeper thereof knew that it was vicious or mischievous.

Utah Code Ann. § 18–1–1 (1998).

5. *Pullan ex rel. Pullan v. Steinmetz*, 2000 UT 103, ¶ 7, 16 P.3d 1245 (noting that the legislature imposed strict liability on dog owners for reasons that would not support extending it to horse owners).